**Opinion issued December 22, 2015**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-15-00023-CV

———————————

**JEFFERY DWAYNE BENOIT, Appellant**

**V.**

**BRENDA FAYE BENOIT, Appellee**

---

**On Appeal from County Court at Law No. 2**
**Orange County, Texas**
**Trial Court Case No. E-140080-D[1]**

---

## MEMORANDUM OPINION

Jeffrey Dwayne Benoit appeals from a divorce decree, dissolving his marriage to Brenda Faye Benoit. In fifteen issues, Jeffrey challenges the trial

---

[1] This appeal, originally filed in the Ninth Court of Appeals, Beaumont, Texas, was transferred by the Supreme Court of Texas, pursuant to its docket equalization authority, to the First Court of Appeals, Houston, Texas. *See* TEX. GOV'T CODE ANN. § 73.001 (Vernon 2013) (authorizing transfer of cases).

court's award of spousal maintenance and its award of appellate attorney's fees in a post-decree temporary order.

We affirm the divorce decree. We reverse the portion of the post-decree order awarding attorney's fees and remand that issue to the trial court for redetermination.

## Background

Brenda and Jeffrey were married on February 16, 1990. Jeffrey filed for divorce on January 14, 2013. Brenda filed a counter-petition. Before trial, the parties entered into a Rule 11 agreement, governing the division of property and debts between the parties. The case was tried to the bench on August 14, 2014. The parties agreed that the only issue to be resolved at trial was whether Brenda was entitled to spousal maintenance.

At trial, Brenda stated that she would be 65 years old the following month. She testified that she netted $706 per month in social security disability benefits, and she confirmed that would be her only income after the divorce.[2] She stated that she had been receiving disability benefits since 2005. Brenda testified that she had been employed in the past, but she had to stop working because she suffered from spasms in her neck, back, legs, arms, and hands, and she has carpal tunnel

---

[2] Brenda testified that the gross amount of her disability benefits was $806; however, $100 of that amount is paid to Medicare.

syndrome. With respect to her educational level, Brenda indicated that she had a GED.

Brenda also presented evidence to establish her monthly living expenses. As an exhibit, Brenda offered an expense sheet listing her monthly expenses in 12 different categories. Brenda testified regarding a number of these categories. The evidence showed that her monthly living expenses were $2,809.

Averaging Jeffrey's earnings from the last three years, Brenda submitted evidence indicating that Jeffrey had an average monthly income of $8,122.75. Brenda requested that she receive 20 percent, or $1,625 a month, in spousal maintenance from Jeffrey for the next seven years. In its October 30, 2014 decree, the trial court granted Brenda's request and ordered Jeffrey to pay Brenda $1,625 a month in spousal maintenance for seven years. The decree also provided that early termination of the spousal maintenance provision would occur at the death of either party, Brenda's re-marriage, or on further order by the trial court, including a finding of cohabitation by Brenda. The decree also divided the property and debt as set out in the parties' Rule 11 agreement.

Jeffrey requested findings of fact and conclusions of law, which were filed by the trial court. Among its findings of fact, the trial court determined:

4.      [Brenda] will lack sufficient property, including her separate property, on dissolution of the marriage to provide for her minimum reasonable needs.

5.  [Brenda] is unable to earn sufficient income to provide for her minimum reasonable needs because of an incapacitating physical disability.

6.  The following factors were taken into consideration in determining the nature, amount, duration, and manner of periodic payments:

    (a) each spouse's ability to provide for that spouse's minimum reasonable needs independently, considering that spouse's financial resources on dissolution of the marriage;

    (b) the education and employment skills of the spouses, the time necessary to acquire sufficient education or training to enable the spouse seeking maintenance to earn sufficient income, and the availability and feasibility of that education or training;

    (c) the duration of the marriage;

    (d) the age, employment history, earning ability, and physical and emotional condition of the spouse seeking maintenance;

    (e) the effect on each spouse's ability to provide for that spouse's minimum reasonable needs while providing periodic child support payments or maintenance, if applicable;

    (f) acts by either spouse resulting in excessive or abnormal expenditures or destruction, concealment, or

4

fraudulent disposition of community property, joint tenancy, or other property held in common;

(g) the contribution by one spouse to the education, training, or increased earning power of the other spouse;

(h) the property brought to the marriage by either spouse; and

(i) the contribution of a spouse as homemaker.

7. [Brenda] and [Jeffrey] were married for at least twenty years but not more than thirty years.

8. [Jeffrey] is forty-seven years old. [Brenda] is sixty-five years old.

9. [Brenda's] ability to provide for her minimum reasonable needs is substantially or totally diminished because of a physical disability. [Brenda] is currently receiving Social Security Disability benefits.

10. The average monthly gross income of [Jeffrey] is $8,122.75. Twenty percent (20%) of that amount is $1,624.55.

11. [Brenda's] monthly gross income, including the court ordered spousal maintenance, is $2,331.00. [Brenda's] average monthly living expenses are $2,809.00.

Based on the findings of fact, the trial court stated, in a conclusion of law, that Jeffrey should pay monthly spousal maintenance of $1,625 to Brenda for seven years.

Jeffrey appealed the trial court's decree on November 24, 2014. That same day, Brenda filed a motion for temporary orders, pending appeal. In response to Brenda's request for temporary orders, Jeffrey filed a plea to the jurisdiction. He asserted that the trial court lost plenary power when the notice of appeal was filed.

The trial court conducted a hearing on the plea to the jurisdiction and on the request for temporary orders. The trial court denied Jeffrey's plea and granted Brenda's request for temporary orders. On December 15, 2014, the trial court signed an order, requiring Jeffrey to pay Brenda $1,625.00 per month in temporary spousal support, while the appeal is pending. The order also required Jeffrey to pay Brenda $5,000 in appellate attorneys' fees by March 1, 2015. The award was not conditioned on Jeffrey's failure to succeed on appeal.

This appeal was originally filed in the Ninth Court of Appeals. In that court, Jeffrey filed a motion to stay, abate, vacate, or reform the trial court's unconditional award of $5,000 appellate attorneys' fees. On January 8, 2015, the Supreme Court of Texas transferred the appeal to this Court pursuant to its docket equalization authority. As a result, Jeffrey's motion to stay, abate, vacate, or reform the trial court's unconditional award of $5,000 in appellate attorneys' fees

6

was also transferred to this Court. In considering the motion, we explained that the $5,000 attorneys' fee award should have been conditioned on Jeffrey's unsuccessful appeal. We noted that such error did not require reversal of the order because the order could be modified on appeal. We stayed the trial court's temporary order with respect to the requirement that Jeffrey had to pay Brenda $5,000 for appellate attorney's fee. Although we granted Jeffrey's motion with respect to the stay, we did not modify the attorney's fees award. Instead, we ordered that Jeffrey's alternate motion to abate, vacate, or reform the trial court's temporary order would be considered with the merits of the appeal.

## Spousal Maintenance

Jeffrey challenges that trial court's award of spousal maintenance in his first through eleventh issues and in his fifteenth issue.

### A. Standard of Review

We review a trial court's ruling on spousal maintenance under an abuse of discretion standard. *Tomsu v. Tomsu*, 381 S.W.3d 715, 718 (Tex. App.—Beaumont 2012, no pet.); *Bonner v. Bonner*, No. 09–11–00194–CV, 2011 WL 5588746, at *1 (Tex. App.—Beaumont Nov. 17, 2011, no pet.) (mem. op.) (citing *Pickens v. Pickens*, 62 S.W.3d 212, 214 (Tex. App.—Dallas 2001, pet. denied)). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner, or when it acts without reference to any guiding principles. *Downer v.*

*Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). A trial court's findings of fact are reviewed for legal and factual sufficiency of the evidence under the same legal standards applied to review jury verdicts for legal and factual sufficiency of the evidence. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996); *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991).

The abuse-of-discretion standard of review overlaps with traditional sufficiency standards of review in family law cases. *See In re S.N.Z.*, 421 S.W.3d 899, 908–09 (Tex. App.—Dallas 2014, pet. denied). As a result, legal and factual insufficiency challenges are not independent grounds for reversal; rather, these challenges constitute factors relevant to the assessment of whether the trial court abused its discretion. *See Wilson v. Wilson*, No. 09–07–484 CV, 2008 WL 2758147, at * 1 (Tex. App.—Beaumont July 17, 2008, no pet.) (referencing *Granger v. Granger*, 236 S.W.3d 852, 856 (Tex. App.—Tyler 2007, pet. denied)); *Moroch v. Collins*, 174 S.W.3d 849, 857 (Tex. App.—Dallas 2005, pet. denied). "Accordingly, to determine whether there has been an abuse of discretion because the evidence is legally or factually insufficient to support the trial court's decision, we engage in a two-pronged inquiry: (1) did the trial court have sufficient evidence upon which to exercise its discretion, and (2) did the trial court err in its application of that discretion?" *Boyd v. Boyd*, 131 S.W.3d 605, 611 (Tex. App.—Fort Worth 2004, no pet.).

With respect to the first question, we apply the appropriate sufficiency standard. *In re B.P.R.*, No. 09–12–00575–CV, 2014 WL 5306530, at *5 (Tex. App.—Beaumont Oct. 16, 2014, no pet.) (citing *Boyd*, 131 S.W.3d at 611). With respect to the second question, we determine whether, based on the evidence presented at trial, the trial court made a reasonable decision. *Id.* (citing *Moroch*, 174 S.W.3d at 857). "Stated inversely, we must conclude that the trial court's decision was neither arbitrary nor unreasonable." *Boyd*, 131 S.W.3d at 611.

In determining whether there is legally sufficient evidence to support a finding, we examine the record and credit evidence favorable to the finding if a reasonable factfinder could and disregard evidence contrary to the finding unless a reasonable fact finder could not. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). A trial judge does not abuse his discretion if some evidence of a substantial and probative character exists to support the decision. *Wilson*, 2008 WL 2758147, at * 1 (citing *Granger*, 236 S.W.3d at 855–56).

In a factual sufficiency review, we consider all the evidence supporting and contradicting the factfinder's finding. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). The evidence is factually insufficient if the finding is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Id.* When sitting as factfinder, the trial court is in the best position to judge

and weigh all the evidence presented and resolve the substantial conflicts in the evidence. *See Wilson*, 2010 WL 2545579, at *5–6.

## B.    Applicability of Presumption against Spousal Maintenance

In his first three issues, Jeffrey asserts that Brenda failed to rebut the statutory presumption, found in Family Code section 8.503, that spousal maintenance is not warranted. Brenda responds that, pursuant to the trial court's findings of fact, the presumption does not apply to the trial court's award in this case. We agree with Brenda.

A trial court may exercise its discretion and award spousal maintenance if the party seeking maintenance meets specific eligibility requirements found in Family Code section 8.051, entitled "Eligibility for Maintenance." TEX. FAM. CODE ANN. § 8.051 (Vernon Supp. 2014). Relevant to this case, Family Code section 8.051(2) provides:

> In a suit for dissolution of a marriage or in a proceeding for maintenance in a court with personal jurisdiction over both former spouses following the dissolution of their marriage by a court that lacked personal jurisdiction over an absent spouse, the court may order maintenance for either spouse only if the spouse seeking maintenance will lack sufficient property, including the spouse's separate property, on dissolution of the marriage to provide for the spouse's minimum reasonable needs and:

. . . .

> (2) the spouse seeking maintenance:

(A) is unable to earn sufficient income to provide for the spouse's minimum reasonable needs because of an incapacitating physical or mental disability;

(B) has been married to the other spouse for 10 years or longer and lacks the ability to earn sufficient income to provide for the spouse's minimum reasonable needs; or

(C) is the custodian of a child of the marriage of any age who requires substantial care and personal supervision because of a physical or mental disability that prevents the spouse from earning sufficient income to provide for the spouse's minimum reasonable needs.

*Id.*

In its findings of fact, the trial court determined that "[Brenda] is unable to earn sufficient income to provide for her minimum reasonable needs because of an incapacitating physical disability."[3]  The trial court's finding indicates that it

---

[3]  Jeffrey has raised no specific issue challenging this finding.  He does, however, weave comments throughout his briefing that indicate he questions the trial court's incapacity finding.  In any event, we note that sufficient evidence was presented to support this finding.  Brenda, who was almost 65 years old, testified that she has been receiving social security disability payments since 2005.  She also testified that she worked as a endoscopy technician in a doctors' office until 2000.  As part of her job she had to use a scope.  She had to quit that job because she had neck, back, leg, arm, and hand spasms, and she could no longer grip the scope.  In addition, she stated that she has carpal tunnel syndrome, which prevented her from being able to perform her job duties.  Brenda later worked part-time at a daycare.  She testified that she had to quit that job because, on a number of occasions, she nearly dropped babies that she was holding due to her weak arms.  Brenda admitted that she can engage in certain household and recreational activities.  She testified that she does these activities at her own pace and that, after she engages in certain activities, she "pay[s] for it the next day."  From this, the trial court could have reasonably found that, while Brenda can engage in certain activities on occasion, she could not engage in them for employment purposes.

11

determined Brenda was entitled to spousal maintenance pursuant to Family Code section 8.051(2)(A). *See id.*

In his brief, Jeffrey asserts that Brenda was required to "overcome the presumption found in [Family Code section] 8.053 that maintenance would be unwarranted for her." We disagree.

Section 8.053 provides,

(a) It is a rebuttable presumption that maintenance under Section 8.051(2)(B) is not warranted unless the spouse seeking maintenance has exercised diligence in:

    (1) earning sufficient income to provide for the spouse's minimum reasonable needs; or

    (2) developing the necessary skills to provide for the spouse's minimum reasonable needs during a period of separation and during the time the suit for dissolution of the marriage is pending.

*Id.* § 8.053 (Vernon Supp. 2014). Reading the plain language of section 8.053, a spouse who has been found under section 8.051(2)(B) to be eligible to receive spousal maintenance because she "has been married to the other spouse for 10 years or longer and lacks the ability to earn sufficient income to provide for the spouse's minimum reasonable needs" must also rebut the section 8.053 presumption that maintenance is unwarranted. *Id.* §§ 8.051(2)(B), 8.053; *see Day v. Day*, 452 S.W.3d 430, 434–35 (Tex. App.—Houston [1st Dist.] 2014, pet. denied). To rebut the presumption, a spouse eligible for maintenance under section

8.051(2)(B) must show that she has "exercised diligence" in "earning sufficient income to provide for the spouse's minimum reasonable needs" or in "developing the necessary skills to provide for the spouse's minimum reasonable needs." *Id.* § 8.053; *see Day*, 452 S.W.3d at 434–35.

As mentioned, the trial court found Brenda was eligible to receive spousal maintenance under section 8.051(2)(A) because she was "unable to earn sufficient income to provide for her minimum reasonable needs because of an incapacitating physical disability." The trial court did not find she was eligible to receive maintenance under section 8.051(2)(B). The rebuttable presumption against maintenance, stated in section 8.053, does not apply in this case. As a result, Brenda had no obligation to offer evidence showing that she "exercised diligence" in "earning sufficient income to provide for [her] minimum reasonable needs" or in "developing the necessary skills to provide for [her] minimum reasonable needs," as required by section 8.053. *Id.* § 8.053.

In his brief, Jeffrey points out that Family Code section 8.053 was amended in 2011. Act of May 18, 2011, 82nd Leg., R.S., ch. 486, § 9, 2011 Tex. Sess. Law Serv. 1239, 1242. The amendment is the current version of the statute and applies to this case. *See* Act of May 18, 2011, 82nd Leg., R.S., ch. 486, § 10(a), 2011 Tex. Sess. Law Serv. 1239, 1242. Jeffrey notes that, before that amendment, section 8.053 specifically excluded spouses who had "an incapacitating physical or mental

13

disability" from the rebuttal presumption.  Act of April 3, 1997, 75th Leg., R.S., ch. 7, § 1, sec. 8.004, 1997 Tex. Sess. Law Serv. 8, 35 (renumbered 2001 and amended 2011) (current version at TEX. FAM. CODE ANN. § 8.053).  Jeffrey points out that the 2011 amendment to section 8.053 deleted this exclusion.  *See* TEX. FAM. CODE ANN. § 8.053.  He asserts that the deletion of the exclusionary language shows that the rebuttable presumption applies to Brenda.  However, Jeffrey fails to recognize that section 8.053, as amended, now only provides when the rebuttable presumption does apply, rather than also stating, as it previously did, when it does not apply.  Under the statute's plain language, the rebuttable presumption applies only to spouses found to be eligible for maintenance pursuant to section 8.051(2)(B); it does not apply to a spouse, such as Brenda, who is found to be eligible for maintenance under 8.051(2)(A) because she has an incapacitating physical disability.

Even if the presumption did apply, Brenda offered ample evidence showing that she could no longer work.  As discussed above, 65-year-old Brenda has been receiving disability benefits since 2005.  She has no education beyond a GED.  She had to quit her job at a doctor's office in 2000 because she could no longer perform her job duties due to spasms in her back, neck, legs, arms, and hands.  She also has carpal tunnel syndrome, which affects her ability to work.  After working at the doctor's office, Brenda had a part-time job in a daycare.  Brenda had to quit that

14

job after she nearly dropped babies she was holding on a couple of occasions because of her diminished arm strength.

We note Jeffrey points out that Brenda admitted that she mows her own grass, cleans her own house, and has gone fishing and bowling. Addressing this evidence, Brenda testified that she completes tasks at her own pace and that her grandchildren help her with her yard work. She acknowledged that she has engaged in recreational activities, but she indicated that she suffers later for it. In sum, the evidence showed that, while Brenda could engage in certain activities occasionally, she could not engage in them for a sustained period of time for employment purposes. Applying the appropriate standards of review, the evidence is legally and factually sufficient to rebut the section 8.053 presumption against maintenance. Thus, it was within the trial court's discretion to determine that Brenda had rebutted the presumption.

We are also mindful that, in its findings of fact, the trial court indicated that it took the following into consideration when determining maintenance: (1) "each spouse's ability to provide for that spouse's minimum reasonable needs independently, considering that spouse's financial resources on dissolution of the marriage"; (2) "the education and employment skills of the spouses, the time necessary to acquire sufficient education or training to enable the spouse seeking maintenance to earn sufficient income, and the availability and feasibility of that

education or training"; and (3) "the age, employment history, earning ability, and physical and emotional condition of the spouse seeking maintenance." These findings indicate that the trial court did take Brenda's employability and earning capacity into consideration when it determined maintenance.

We overrule Jeffrey's first three issues.

## C.     Marital Standard of Living

In his fourth issue, Jeffrey challenges the basis for the monthly $1,625 maintenance. Jeffrey claims that the trial court abused its discretion by improperly basing the award on Brenda's "former marital standard of living."

As mentioned, Family Code section 8.051 provides that a trial court may order spousal maintenance if the spouse seeking maintenance will lack sufficient property upon dissolution of the marriage to provide for her minimum reasonable needs and if certain other conditions are satisfied. TEX. FAM. CODE ANN. § 8.051. Family Code section 8.052 lists factors for the trial court to consider when determining the "nature, amount, duration, and manner" of spousal maintenance. TEX. FAM. CODE ANN. § 8.052 (Vernon Supp. 2014). These factors include the following: (1) the ability of the spouse seeking maintenance to provide for his or her own minimum reasonable needs independently; (2) the spouses' education and employment skills; (3) the duration of the marriage; (4) the age, employment history, earning ability, and physical and emotional condition of the spouse seeking

16

maintenance; (5) the effect on each spouse's ability to provide for that spouse's minimum reasonable needs while providing periodic child support payments or maintenance, if applicable; (6) "acts by either spouse resulting in excessive or abnormal expenditures or destruction, concealment, or fraudulent disposition of community property"; (7) the contribution by one spouse to the education, training, or increased earning power of the other spouse; (8) property brought to the marriage by either spouse; and (9) the contribution of a spouse as homemaker. *Id.*

In its findings of fact, the trial court stated that it considered the foregoing nine factors, including Brenda's ability to meet her own "minimum reasonable needs," when it determined the nature, amount, duration, and manner of the spousal maintenance award. Jeffrey asserts that the maintenance award was not based on Brenda's minimum reasonable needs; rather, he claims it was improperly based on Brenda's "former marital standard of living." In support of this assertion, Jeffrey avers that the trial court "look[ed] to what [Brenda] was buying during her marriage to [Jeffrey]."

To establish her living expenses, Brenda offered into evidence, without objection from Jeffrey, a list of the following monthly expenses:

| | |
|---|---|
| 1. House Note | $879.00 |
| 2. Car Note | $225.00 |
| 3. Car Insurance | $ 85.00 |
| 4. Utilities | $300.00 |
| 5. Gasoline | $350.00 |
| 6. Food | $300.00 |
| 7. Various Sundries | $200.00 |
| 8. Health Insurance | $100.00 |
| 9. Clothes | $100.00 |
| 10. Cell Phone | $130.00 |
| 11. House Insurance | $70.00 |
| 12. Property Taxes | $70.00 |

**Total Living Expenses** **$2,809.00**

Brenda also testified regarding a number of these expenses.[4]

To support his argument that the trial court's award was based on Brenda's marital standard of living, rather than her minimum reasonable needs, Jeffrey points out that Brenda's itemized expenses included payments for a pickup truck and the couple's home, items purchased during their marriage. However, these items were listed to show Brenda's post-divorce living expenses, not to show her marital standard of living. The two cited items related to housing and transportation, items that the trial court could have reasonably inferred were reasonable living necessities. Brenda made no attempt to offer evidence to show her marital lifestyle. To the contrary, at trial, Brenda's attorney asked her, "[Y]ou

---

[4] Brenda clarified that the monthly house-note payment was actually $979.00 rather than $879.00. Thus, Brenda's total monthly expenses are $2,909.00 rather than $2,809.00. However, the trial court found Brenda's monthly living expenses to be $2,809, so that is the amount to which we will also refer.

understand that I cannot—based on limitations under the law—potentially keep you in the lifestyle to which you were accustomed when you have a husband earning 90 to 100,000 a year? I mean, I can't get you there." Brenda acknowledged she understood that the maintenance award would not maintain her marital lifestyle. And, as mentioned, the trial court's findings of fact reflect that the trial court properly considered the statutory factors listed in Family Code section 8.052 in determining the amount of the maintenance. *See* TEX. FAM. CODE ANN. § 8.052. The stated factors did not include consideration of Brenda's former marital standard of living. We conclude that Jeffrey has not shown that the trial court abused its discretion by basing the maintenance award on an improper standard.

We overrule Jeffrey's fourth issue.

## D. Minimum Reasonable Needs

In his fifth issue, Jeffrey asserts that the trial court abused its discretion by awarding Brenda "spousal maintenance amounts which exceed her 'minimum reasonable needs.'" *See* TEX. FAM. CODE ANN. § 8.051.

The term "minimum reasonable needs" is not defined in the Family Code. *Slicker v. Slicker*, 464 S.W.3d 850, 860 (Tex. App.—Dallas 2015, no pet.) (citing *Cooper v. Cooper*, 176 S.W.3d 62, 64 (Tex. App.—Houston [1st Dist.] 2004, no pet.)). A trial court determines whether a party's minimum reasonable needs are

19

met on a fact-specific, individualized, case-by-case basis. *Slicker*, 464 S.W.3d at 860 (citing *Amos v. Amos*, 79 S.W.3d 747, 749 (Tex. App.—Corpus Christi 2002, no pet.)). In its fourth finding of fact, the trial court determined that "[Brenda] will lack sufficient property, including her separate property, on dissolution of the marriage to provide for her minimum reasonable needs."

The Rule 11 agreement provided that Brenda would be awarded the couple's marital homestead in Mauriceville, Texas, and a pickup truck. Money was still owed on each of these items. In her expense statement, Brenda listed the $879 house note for the Mauriceville home and the $225 car note for the pickup truck as monthly expenses. On appeal, Jeffrey asserts that the trial court should not have considered the $879 house note or the $225 car note in determining Brenda's monthly living expenses. Jeffrey points out that, in addition to being awarded these items, Brenda was also awarded, as her separate property, a classic 1965 Mustang and a lake home. Jeffrey avers that, because she was awarded her separate property, the Mustang and the lake home, Brenda "has a place to stay and a way around (i.e., shelter and transportation)." For this reason, Jeffrey asserts that the $879 house note and the $225 car note should not be included as a basis for spousal maintenance. Jeffrey claims that inclusion of these expenses in the amount of maintenance was an abuse of the trial court's discretion.

At trial, Brenda testified that the market value of the lake house was $28,000 to $30,000. As Brenda points out, no evidence was offered to show the condition or habitability of the lake house. Jeffrey's attorney asked Brenda if she knew that the tax rolls indicated the lake house was valued at $45,000. Brenda responded that she had protested the $45,000 valuation because of the condition of the house. She stated that the value on the tax rolls was then lowered. From this testimony, the trial court may have inferred that the home was in need of repair.

With regard to the 1965 Mustang, Brenda testified that it had been appraised at $22,995. However, no evidence was presented whether the the 50-year-old car was operable or in good working condition. The trial court may have reasonably inferred that a 50-year-old car Mustang would not be practical transportation for everyday use for a 65-year-old disabled woman. Given the fact-specific nature of the inquiry, it was within the trial court's discretion to consider the house and car notes in determining Brenda's reasonable minimum needs.

We overrule Jeffrey's fifth issue.

**E.     Factual Sufficiency of Evidence to Support Maintenance of $1,625**

Jeffrey frames his sixth issues as follows: "The evidence was factually insufficient to set spousal maintenance at $1,625 per month, where [Brenda's] monthly expense sheet contained vague headings which claimed expenses in round numbers, but had no receipts to verify the amount claimed." Jeffrey asserts that

Brenda's monthly expense sheet, to which he offered no objection at trial, "contains ubiquitous and overbroad categories for which no receipts were put in evidence, such as 'Various Sundries,' which are valued at $200/month." Jeffrey also asserts that the $130 cellular phone bill that Brenda listed on her expense sheet should not have been considered by the trial court in its determination of spousal maintenance.

Jeffrey remarks that Brenda did not offer receipts to support her claimed monthly expenses. There is, however, no requirement that a spouse produce receipts as evidence of her minimum reasonable needs. In fact, other courts have upheld an award of maintenance even when the spouse receiving maintenance had not submitted a list of expenses. *See, e.g., Diaz v.* Diaz, 350 S.W.3d 251, 254–55 (Tex. App.—San Antonio June 22, 2011, pet. denied) (noting that "[w]hile a list of expenses is helpful, such a list is not the only evidence upon which a trial court can determine a person's 'minimum reasonable needs'") (citing *Trueheart v. Trueheart*, No. 14–02–01256–CV, 2003 WL 22176626, at *2 (Tex. App.—Houston [14th Dist.] Sept. 23, 2003, no pet.) (mem. op.) (rejecting husband's argument that wife was required to offer itemized list of monthly expenses as evidence to support her minimum reasonable needs)). Here, Brenda did provide a monthly expense sheet and testified regarding certain categories listed on the sheet.

With respect to the $200 expense listed under the heading "various sundries," Jeffrey complains, "[I]t is never specified anywhere what this is other than to imply it means woman's toiletries, which largely are not necessaries, nor should they be so expensive for a post-menopausal woman." At trial, Brenda's attorney questioned her about this category. He stated: "And when I said various sundries I put on here, that's lady stuff. I don't know all the stuff you guys buy; but you might get some makeup or you might have some other items that you buy that we estimated at $200 a month." Brenda responded affirmatively.

Besides challenging the $200 expense for "women's toiletries," Jeffrey also characterizes Brenda's monthly cell phone bill as being "exorbitant." But, Jeffrey points to no evidence to show that the $130 bill was not an acceptable charge. Jeffrey further avers that an unemployed 65-year-old woman has no need of a cell phone. However, the trial court may have reasoned that it was because Brenda is a 65-year-old woman with disabilities that she needs a mobile phone.

Jeffrey also points to language in *Tedder v. Gardner Aldrich, LLP* in which the Supreme Court of Texas stated, "We have suggested that a spouse's necessaries are things like food, clothing, and habitation—that is, sustenance—and we have squarely rejected the view that a spouse's legal fees in a divorce proceeding fall into this category." 421 S.W.3d 651, 656 (Tex. 2013) (footnotes omitted). This statement in *Tedder* was made in the context of the court's determination of

23

whether a husband was liable for his wife's legal fees incurred in their divorce proceeding. *See id.* *Tedder* is of limited guidance here because it did not involve a determination of what is appropriately considered in determining a spouse's minimum reasonable needs in the context of awarding monthly spousal maintenance. Thus, *Tedder* did not compel the trial court to discount the expenses for the cell phone and "women's toiletries," as Jeffrey claims.

As mentioned, the term "minimum reasonable needs" is not defined in the Family Code. *Slicker*, 464 S.W.3d at 860. Nor has any case authority attempted to define it. Rather, a trial court determines whether a party's minimum reasonable needs are met on a fact-specific, individualized, case-by-case basis. *Id.* As one court correctly observed, "Deciding what the minimum reasonable need is for a particular individual or family is a fact-specific determination that ordinarily should be made by the trial court." *In re Marriage of Hale*, 975 S.W.2d 694, 698 (Tex. App.—Texarkana 1998, no pet.). Given the realities of modern living and the evidence in the record, the trial court could have reasonably determined that the monthly fee for the cell phone and "various sundries" fell within Brenda's reasonable minimum needs. *See id.* (rejecting husband's argument that credit card bill was not a "need" within the context of determining minimum reasonable needs for spousal maintenance).

In any event, even if we were to subtract the $330 for these two items from Brenda's monthly living expenses of $2,809, her monthly expenses would be $2,479. This still exceeds Brenda's net income of $706 a month and supports a determination by the trial court that Brenda lacked sufficient property to meet her minimum reasonable needs. *See* TEX. FAM. CODE ANN. § 8.051.

Jeffrey also intimates that the specific amount of the maintenance—$1,625 per month—was not supportable because of the claimed deficiencies with these two items. However, the trial court did not indicate that the $1,625 per month maintenance was intended to be a one-to-one correspondence with Brenda's monthly living expenses. Nor does the Family Code require such a one-to-one correspondence in setting the amount of maintenance. Rather, Family Code section 8.502 lists factors for the trial court to consider when determining "the nature, amount, duration, and manner" of the maintenance award. *See* TEX. FAM. CODE ANN. § 8.052. Here, the trial court stated that it relied on a number of these factors in determining the award, including Brenda's ability to provide for her own minimum reasonable needs independently.

With respect to the specific amount of maintenance, Family Code section 8.055 provides that a court may not order a spouse to pay monthly maintenance in an amount more than the lesser of $5,000 or 20 percent of the spouse's average monthly gross income. TEX. FAM. CODE ANN. § 8.055(a) (Vernon Supp. 2014).

25

Within the parameters of section 8.055, the trial court found: "The average monthly gross income of [Jeffrey] is $8,122.75. Twenty percent (20%) of that amount is $1,624.55."

After considering Jeffrey's assertions in this issue, we conclude that the trial court's award of $1,625 is not so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. Within the context of this issue, Jeffrey has not shown that the trial court abused its discretion when it awarded Brenda $1,625 in monthly spousal maintenance.

We overrule Jeffrey's sixth issue.

## F.    Debts for the Mauriceville Home and the Truck

In his seventh and eighth issues, Jeffrey asserts that the trial court abused its discretion because the spousal maintenance award violates the parties' Rule 11 agreement wherein the parties agreed to the division of property and debts. The Rule 11 agreement was approved by the trial court and its terms incorporated into the final divorce decree.

Pursuant to the Rule 11 agreement, Brenda was awarded the couple's Mauriceville home and a pickup truck. Both the home and the truck had outstanding debt. The monthly payment on the house note is $979 (though Brenda's expense sheet states it as $879) and the monthly payment on the car note

is $225. It is not in dispute that, under the Rule 11 agreement, Brenda is responsible for paying the house note and the car note.

At trial, Brenda showed that her monthly living expenses were $2,809. Without objection from Jeffrey, Brenda included the $879 house note and the $225 car note in this sum. In his brief, Jeffrey claims that the trial court abused its discretion because it "found that [Jeffrey] would pay both notes on the homestead and the truck over the next 7 years as maintenance." Jeffrey asserts "[c]onverting a debt into spousal maintenance is a change in the substantive division of the property. . . ." Jeffrey intimates that the trial court converted the debts for the house and car notes into spousal maintenance. Jeffrey's assertion is not, however, supported by the record.

As discussed above, the trial court's findings of fact indicate that it determined the nature, amount, duration, and manner of maintenance by applying factors listed in Family Code section 8.052. And, the specific award of $1,625 is 20 percent of Jeffrey's average monthly income, as permitted by Family Code section 8.055. *See* TEX. FAM. CODE ANN. § 8.055(a). Nothing in the record indicates that the $1,625 maintenance was intended to correspond to the $225 car note or to the $879 house note any more than it was intended to correspond to Brenda's remaining $1,709 in monthly expenses.

Jeffrey cites *Everett v. Everett*, 421 S.W.3d 918 (Tex. App.—El Paso 2014, no pet.) to support his assertion that the trial court improperly converted the debt for the house and car notes into spousal maintenance. *Everett*, however, is distinguishable from this case.

There, the trial court rendered a clarification order of the divorce decree. *Id.* at 921. In the clarification order, the trial court increased the amount of the husband's spousal maintenance payments in direct correlation to a specifically identified debt in a specifically identified amount. *Id.*

On review of the clarification order, the court of appeals noted, "Under section 9.007 of the Texas Family Code, a trial court is prohibited from amending, modifying, altering, or changing the division of property as finalized in the divorce decree." *Id.* The court indicated that a division of debt is part of the division of property. *See id.* The *Everett* court held that the trial court had abused its discretion by rendering a clarification order that increased the amount of maintenance to cover a corresponding debt. *See id.* The court explained, "[C]onverting a debt into spousal maintenance is not merely a clarification, it is a change in the substantive division of property and cannot be enforced under the statute." *Id.* (citing TEX. FAM. CODE ANN. § 9.007(b)). Unlike in *Everett*, the trial court here did not indicate that a certain portion of the maintenance corresponded to any specific debt, including the debts owed on the car and house notes. Rather,

the record shows that the trial court determined maintenance by considering the governing statutory provisions.

We hold that Jeffrey has not shown that the trial court improperly converted the debt owed by Brenda on the house and car notes into spousal maintenance. Thus, we hold that Jeffrey has not shown that the trial court abused its discretion in this regard.

We overrule Jeffrey's seventh and eighth issues.

**E.     Lack of Sufficient Property**

As we construe his ninth issue, Jeffrey asserts that the trial court abused its discretion by awarding Brenda maintenance because she failed to show that she would "lack sufficient property, including [her] separate property, on dissolution of the marriage to provide for [her] minimum reasonable needs," as required by Family Code section 8.051. *See* TEX. FAM. CODE ANN. § 8.051.

"When considering whether the spouse seeking spousal maintenance will have sufficient property after the divorce to provide for her minimum reasonable needs, the trial court may consider the liquidity of the assets awarded to her and their ability to produce income." *Everitt v. Everitt*, No. 01–11–00031–CV, 2012 WL 3776343, at *8 (Tex. App.—Houston [1st Dist.] Aug. 31, 2012, no pet.) (mem. op.). Jeffrey claims that Brenda was not eligible for maintenance because she has sufficient property, specifically the lake home, valued at approximately $30,000,

29

and the classic 1965 Mustang, valued at $23,000, to meet her reasonable minimum needs. These two items were awarded to Brenda in the divorce as her separate property. The evidence indicated that Brenda owned the lake home and the Mustang before she married Jeffrey. In its findings of fact, the trial court stated that it had considered property brought to the marriage by either spouse in its determination of the nature, amount, duration, and manner of spousal maintenance. *See* FAM. CODE ANN. § 8.052 (listing property brought to marriage as a factor for determining maintenance).

"In considering assets awarded in the divorce, the law does not require a spouse to spend down long-term assets, liquidate all available assets, or incur new debt simply to obtain job skills and meet needs in the short term." *See Dunaway v. Dunaway*, No. 14–06–01042–CV, 2007 WL 3342020, at *3 (Tex. App.—Houston [14th Dist.] Nov. 13, 2007, no pet.) (mem. op.). "[C]ourts, in considering if a spouse is eligible for spousal maintenance, have upheld the award in situations where the spouse receiving the maintenance obtained substantial property in the divorce proceeding when those capital assets provided insufficient support." *In re McFarland,* 176 S.W.3d 650, 658 (Tex. App.—Texarkana 2005, no pet.) (discussing *O'Carolan v. Hopper*, 71 S.W.3d 529, 533 (Tex. App.—Austin 2002, no pet.); *Lopez v. Lopez*, 55 S.W.3d 194 (Tex. App.—Corpus Christi 2001, no pet.); *Trueheart*, 2003 WL 22176626, at *3; *Alaghehband v. Abolbaghaei*, No. 03–

02–00445–CV, 2003 WL 1986777, at *5, (Tex. App.—Austin May 1, 2003, no pet.) (mem. op.)).

Here, the trial court may have reasonably determined that the property was not sufficiently liquid in nature to meet Brenda's present minimum reasonable needs because the lake home and classic car may take time to sell. As a result, Brenda may not realize any value from these items for some time and be unable to meet her current financial needs. *See In re Boyd*, No. 07–14–00211–CV, 2015 WL 3941614, at *5 (Tex. App.—Amarillo June 24, 2015, no pet.) (mem. op.) (indicating that, because home, "various collections," long-term insurance policy, and retirement account awarded to wife were types of property that may require time to sell, such property was not necessarily "liquid" in nature and did not establish that wife had sufficient property to meet her minimum needs); *McFarland*, 176 S.W.3d at 659 ("[T]he home is not a readily liquid asset and is incapable of producing current income.").

The trial court may have also taken into consideration the deficit Brenda has in paying her monthly expenses, even while receiving maintenance. The trial court found, "[Brenda's] monthly gross income, including the court ordered spousal maintenance, is $2,331.00. [Brenda's] average monthly living expenses are $2,809.00." Thus, the trial court may have determined that any money realized from the sale of the lake house and Mustang could help cover this deficit. In

31

addition, even if she could successfully liquidate the property for the combined value of $53,000, the money realized from the sale, combined with her net social security disability benefits, would be exhausted in a little over two years.

We hold that Jeffrey has not shown that the trial court abused its discretion when it awarded Brenda maintenance, even though she was awarded the lake home and the Mustang as her separate property. We overrule Jeffrey's ninth issue.

## F.    Considering Parties' Income Sources

Jeffrey's tenth, eleventh, and fifteenth issues are intertwined. In these issues, Jeffrey claims that the trial court abused its discretion by considering the bonuses he had received from his employer while not considering potential income sources for Brenda. Jeffrey also asserts that the trial court should have considered his living expenses as it had considered Brenda's expenses when calculating the maintenance. Jeffrey further claims that the seeming disparity in how the trial court viewed the income and the expenses of each party violated the Equal Rights Amendment to the Texas Constitution. *See* TEX. CONST. art. I, § 3a.

We begin by addressing Jeffrey's argument that the trial court abused its discretion because it considered his past bonuses in determining maintenance.

At trial, Brenda offered Jeffrey's W-2s for the years 2011, 2012, and 2013. These showed that Jeffrey earned $96,323 in 2011, $92,838 in 2012, and $103,258 in 2013. These amounts included bonuses earned by Jeffrey in each year.

Using all three years, Brenda offered a worksheet demonstrating that the average monthly income for these three years was $8,122.75. Brenda requested 20 percent of this amount, $1,625 per month, as maintenance. In its findings of fact, the trial court determined, "The average monthly gross income of [Jeffrey] is $8,122.75. Twenty percent (20%) of that amount is $1,624.55."

On appeal, Jeffrey complains that the trial court should not have included his bonuses when calculating his gross income. In support of this assertion, Jeffrey points to his testimony regarding the bonuses. Jeffrey testified that his base salary, without a bonus, is $65,000. He stated the he receives his bonus in a lump sum at the end of the year. Jeffrey testified that his receipt of a bonus and its amount are dependent on how profitable his employer is in any given year. He indicated that there is no guarantee he will continue to receive a bonus or that it will be in the amounts that he has received in the past. Based on this testimony, Jeffrey claims that the trial court abused its discretion "by imputing a non-current and undependable salary bonus . . . to [him] before calculating the amount of spousal maintenance." We disagree.

Family Code section 8.055 provides that a trial court may not order maintenance that requires payment monthly of more than the lesser of $5,000 or 20 percent of the spouse's average monthly gross income. TEX. FAM. CODE ANN. § 8.055(a). Section 8.005 further provides that, for purposes of Chapter 8,

governing maintenance, "gross income" includes "100 percent of all wage and salary income and other compensation for personal services (including commissions, overtime pay, tips, *and bonuses*)." *See id.* § 8.055(a–1)(1)(A) (emphasis added). Thus, Family Code section 8.055 expressly provides that bonuses are included when calculating gross income for purposes of determining spousal maintenance. *See id.*

In addition, although Jeffrey testified that it is possible that his income could decrease, the evidence showed that Jeffrey had received a bonus for the three consecutive years preceding trial. Hence, there was some evidence to support an inference by the trial court that Jeffrey would likely continue to receive a bonus in the amounts that he had received in the past. We conclude that it was within the trial court's discretion to consider Jeffrey's bonus when calculating his gross monthly income. *See id.*

Jeffrey also complains that the trial court abused its discretion because it did not consider possible future sources of income for Brenda to "offset" the amount of maintenance he is required to pay. Jeffrey points out that, at the time of trial, Brenda was one month away from her 65th birthday. He asserts that the trial court should have considered the social security payments Brenda was eligible to receive after she turned 65. However, no evidence was presented at trial regarding any aspect of social security benefits to which Brenda would be entitled based on her

age. Instead, the record showed only that Brenda was netting $706 in social security disability benefits.

Jeffrey further asserts that Brenda may be entitled to income from her first husband's social security benefits. The testimony indicated that Brenda had divorced her first husband, and he is now deceased. Brenda testified that she had inquired about whether she was entitled to her first husband's social security benefits. Brenda indicated that she had been told that she may be entitled to them; however, because her first husband had remarried, she was not certain whether she would be entitled to his benefits.

Jeffrey further asserts that the trial court should have taken into consideration the potential for Brenda to rent out the lake house. However, no evidence was presented regarding the amount of rent that could be charged or whether the lake house was in a rentable condition.

In short, the trial court could have inferred that, at the time of trial, Brenda's only source of income was the $706 in monthly social security disability benefit that she received. With regard to Jeffrey's assertion that Brenda had other income sources, the evidence was speculative at best. Thus, it was proper for the trial court not to impute any other source of income to Brenda.

Jeffrey also claims that the trial court violated his rights under the Equal Rights Amendment to the Texas Constitution, which provides, "Equality under the

law shall not be denied or abridged because of sex, race, color, creed, or national origin." TEX. CONST. art. I, § 3a. Jeffrey asserts that, by considering his bonuses but not considering Brenda's other potential sources of income, the trial court violated his rights under this constitutional provision.

Jeffrey acknowledges that he did not assert his constitutional complaint in the trial court. However, he claims that he did not need to assert his constitutional complaint in the trial court because it was "self-operative." We disagree.

To preserve an argument for appellate review, including constitutional arguments, a party must present it to trial court by timely request, motion, or objection, state specific grounds therefore, and obtain a ruling. *See* TEX. R. APP. P. 33.1(a); *In re L.M.I.*, 119 S.W.3d 707, 711 (Tex. 2003). For this reason, Jeffrey waived his constitutional argument by not presenting it in the trial court.

Jeffrey further complains that the trial court abused its discretion because it should have considered his monthly expenses, such as his monthly rental payment, when calculating the amount of maintenance he was required to pay Brenda. However, as pointed out, Family Code section 8.052 provides the factors for the trial court to consider when determining the nature, amount, duration, and manner of the maintenance payments. The trial court indicated that it had applied many of these factors in determining the maintenance award. Among these factors, the trial court indicated that it had considered "each spouse's ability to provide for that

36

spouse's minimum reasonable needs independently, considering that spouse's financial resources on dissolution of the marriage."

Lastly, Jeffrey claims that the trial court should have ordered his monthly payments to decrease when Brenda pays off the house and car notes. However, Jeffrey does not show where in the record he requested the trial court to incorporate such a decrease. We further note that, a trial court may modify the amount of spousal maintenance a person is required to pay if the circumstances of a party have materially and substantially changed since the date of the prior order's rendition. *See* TEX. FAM. CODE ANN. § 8.057(c) (Vernon Supp. 2014); *Rother v. Rother*, No. 04–13–00899–CV, 2014 WL 4922898, at *2 (Tex. App.—San Antonio Oct. 1, 2014, no pet.) (mem. op.). Thus, to the extent that any material and substantial change in financial circumstances occurs, Jeffrey may request the trial court to modify the maintenance order.

We overrule Jeffrey's tenth, eleventh, and fifteenth issues.

## Appellate Attorney's Fees

In his fourteenth issue, Jeffrey challenges the appellate attorney's fees awarded to Brenda in the temporary order pending appeal.[5] Jeffrey asserts that Brenda failed to offer sufficient evidence to support the award.[6] We agree.

---

[5]  We have previously recognized that challenges to a post-decree temporary order may be raised in the appeal of the decree. *See Massey v. Massey*, 813 S.W.2d 605, 606 (Tex. App.—Houston [1st Dist.] 1991, no writ).

37

We first address a jurisdictional argument raised by Jeffrey. Jeffrey asserts that the trial court lacked plenary power to award the post-decree attorney's fees because the order awarding the fees was signed more than 30 days after the decree was rendered.

The Family Code provides that, within 30 days of the date an appeal is perfected in a suit for dissolution of marriage, the trial court may render a temporary order "necessary for the preservation of the property and for the protection of the parties during the appeal," including an order to require the payment of reasonable attorney's fees and expenses. TEX. FAM. CODE ANN. § 6.709(a)(2) (Vernon 2006).

Here, the decree was signed on October 30, 2014. Jeffrey timely filed a notice of appeal on November 24, 2014. *See* TEX. R. APP. P. 26.1. The trial court signed its temporary order, awarding the appellate attorney's fees less than 30 days later on December 15, 2014. Because it rendered the order within 30 days of when the appeal was perfected, the trial court had jurisdiction to render the temporary

---

[6] Brenda asserts that Jeffrey has waived this issue because it is not adequately briefed. In his brief, Jeffrey avers that Brenda did not "make an adequate prove-up" of her attorney's fees. He points out that Brenda did not offer evidence of her attorney's hourly rate or show how many hours the attorney had worked on the appeal. We reject Brenda's claim that Jeffrey waived the issue due to inadequate briefing. *See* TEX. R. APP. P. 38.1(i); *cf. City of Arlington v. State Farm Lloyds*, 145 S.W.3d 165, 167–68 (Tex. 2004) (holding appellate court must search entire record for legal sufficiency challenge even though appellant did not include specific record citations but instead cited to "the entire record").

order awarding Brenda her appellate attorney's fees.  *See* TEX. FAM. CODE ANN. § 6.709(a)(2).

With respect to the merits of the award, we review the trial court's decision to award attorney's fees for abuse of discretion.  *Tomsu*, 381 S.W.3d at 719.  To recover attorney's fees, the party must prove the reasonableness of the fees.  *Id.* (citing *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998)).  The non-exhaustive *Arthur Andersen* factors provide the guiding principle for determining whether attorney's fees are reasonable.  *Id.* (citing *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997)).

The record shows that, after the trial court rendered the decree, Brenda filed a motion for temporary orders pending appeal.  In the motion, Brenda requested the trial court to render an order "[r]equiring payment of reasonable attorney's fees and expenses to [Brenda] in the amount of at least $10,000.00 . . . ."  Brenda did not offer an affidavit or any other evidence to support her motion.

The trial court conducted a hearing regarding the motion.  Although he had already retained an appellate attorney, Jeffrey's trial counsel appeared at the hearing on his behalf.  Brenda's appellate counsel also appeared.

With respect to the attorney's fees, the trial court began by informing Brenda's counsel: "I'm not going to grant 10,000 [dollars.]."  At that point, Jeffrey's trial counsel spoke up, stating that it was his understanding that Jeffrey

had paid his appellate counsel a $2,600 retainer. Trial counsel characterized the retained appellate attorney as "a longtime" family appellate attorney.

Brenda's counsel responded by stating that he had already prepared findings of fact and conclusions of law and had yet to read the record and prepare her appellate briefing. He pointed out that he may also have to participate in oral argument. Brenda's counsel continued,

> The Court can decide what's reasonable for that; but to me, if she came in to hire me for an appeal, I wouldn't do that for . . . $2,600. I would not. So, whatever his lawyer charged has nothing to do with me or what the Court considers reasonable in this case.

The trial court and Brenda's trial counsel then commented that neither of them knew Brenda's appellate counsel. The trial court stated, "So, that's not to say anything good. That's not to say anything bad. I just don't know him. And—well, what I'm going to do is order, at this time, attorney fees of $5,000 to [Brenda's counsel]." No further discussion was held regarding the specific amount of the attorney's fees to be awarded, and the record contains no documentary or other evidence to support the fees. Jeffrey points out in his brief that no evidence was offered to show the hourly rate of Brenda's counsel or how many hours he anticipated spending on the appeal.

In the temporary order, the trial court stated: "The Court finds that reasonable interim attorney's fees and expenses to be paid by [Jeffrey] to [Brenda's] attorney are necessary for [Brenda's attorney] to properly prepare for

appeal." Despite this finding, we agree with Jeffrey that Brenda presented no evidence to support the reasonableness of the $5,000 attorney's fee award, as required. *See id.*

Nonetheless, as Brenda points out, the trial court was familiar with the issues, the complexity of case, and the size of the record. And, as stated, Brenda's counsel verbally detailed the tasks he had to undertake in representing her on appeal. Although there is no evidence to show the reasonableness of a $5,000 attorney's fee, there is support in the record to warrant an award of attorney's fees to Brenda. *See id.*

We hold that, without supporting evidence showing the reasonableness of the fees, the trial court abused its discretion by awarding appellate attorney's fees of $5,000. *See id.* We sustain Jeffrey's fourteenth issue to the extent it challenges the sufficiency of the evidence to support the attorney's fees award. We need not reach Jeffrey's twelfth and thirteenth issues, which also challenge the award of attorney's fees.

## Conclusion

We affirm the trial court's divorce decree. We reverse the portion of the trial court's temporary order awarding $5,000 in attorney's fees, and we remand

the case to the trial court for a determination of Brenda's appellate attorney's fees.[7]

We further dismiss as moot Jeffrey's motion to abate, vacate, or reform the trial court's temporary order, which is pending in this Court and was ordered to be considered with the merits of the appeal.

Laura Carter Higley
Justice

Panel consists of Justices Jennings, Higley, and Brown.

---

[7] In the temporary order, the trial court also ordered Jeffrey to pay spousal maintenance during the pendency of the appeal. Jeffrey has not challenged that portion of the order; thus, it is affirmed. *See Reeder v. Wood Cty. Energy, LLC*, 395 S.W.3d 789, 798 (Tex. 2012) (op. reh'g) (affirming portions of judgment not challenged by appellant, even though reversing other parts of judgment).