**Affirmed and Opinion Filed May 21, 2015**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-13-01762-CV

**WILLIAM C. SLICKER, Appellant**
**V.**
**PHYLLIS A. SLICKER, Appellee**

**On Appeal from the 255th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DF-11-15742**

## OPINION

Before Chief Justice Wright and Justices Fillmore and O'Neill[1]
Opinion by Chief Justice Wright

In this divorce proceeding, the trial court rendered a decree of divorce and signed findings of fact and conclusions of law after a bench trial. Appellant William C. Slicker ("Husband") appeals the trial court's judgment, contending that the trial court abused its discretion in its rulings regarding division of the community estate, spousal maintenance, and monetary awards to appellee Phyllis A. Slicker ("Wife"). Because the evidence supports the trial court's rulings, we affirm the trial court's judgment.

### BACKGROUND

The parties were married on January 6, 1974, almost forty years before their divorce in 2013. They separated in 2011, and Wife filed a petition for divorce on September 7, 2011. In an

---

[1] The Hon. Michael J. O'Neill, Justice, Court of Appeals, Fifth District of Texas at Dallas, sitting by assignment.

amended petition filed in 2012, Wife sought a disproportionate share of the marital estate and alleged that Husband "has committed fraud on the community estate." Wife also requested that "the Court reconstitute the community estate to its full value prior to [Husband's] depletion of the community estate by his fraudulent acts" before dividing the estate in a just and right manner.[2] She alleged that Husband had engaged in constructive fraud and waste of assets, and that he had "left little or no community property" and had "squandered community assets" in "violation of [his] duty as co-manager of the community estate" and in violation of the trial court's standing order. Wife also sought spousal maintenance.

At trial before the court, each party offered fact and expert testimony regarding the community estate. Much of the evidence related to a trust created during the marriage in 1993 by Husband's parents as grantors ("1993 Trust"). The 1993 Trust named Husband as the primary beneficiary and provided that, on Husband's death, the principal and accrued but undistributed income of the 1993 Trust would be held in trust for the benefit of Wife. Each of Husband's parents transferred 1712 shares of Cabe Land Co., Inc., an Arkansas corporation, to the 1993 Trust. Each parent also transferred a 2.08375% partnership interest in CLC Land Company, a general partnership, to the 1993 Trust. The trust instrument expressly provided that "the Trustee shall pay annually all of the net income of the estate" to Husband. The parties appear to agree that the net income paid from the 1993 Trust each year is community property. It also appears to be undisputed that the 1993 Trust no longer holds either the shares of Cabe Land Co., Inc. or the partnership interest in CLC Land Company. At the time of trial, according to Husband, the 1993 Trust held only five assets: (1) $7,926.49 in a money market fund; (2) a condominium valued at $125,916.45; (3) a 20% interest in a company called Cablein LLC,

---

[2] As we discuss below, under section 7.009 of the Texas Family Code, if a trial court determines that a spouse has committed actual or constructive fraud on the community, the court may calculate the value by which the community estate was depleted as a result of the fraud, and then calculate the value of the "reconstituted" estate as if the fraud had not occurred. TEX. FAM. CODE ANN. § 7.009 (West Supp. 2014).

–2–

valued at $41,150; (4) a 4.2149% interest in Cabe Minerals valued at $1,698.18; and (5) an unvalued 5,086.5 shares in Cabe General. Husband contends that only Cabe Minerals generated any income.

Evidence offered at trial also showed that in the years before the parties' separation and after, Husband withdrew large sums of money from the community estate. In 2005 and 2006, for example, Husband and Wife entered into "Investment Agency Agreements" with Bancorp South Bank ("Bancorp"), depositing assets into the investment fund created by the agreements (the "agency account"). The record includes a letter from Wife authorizing Bancorp to "accept investment decisions from my husband" regarding the fund. The 2005 and 2006 tax ledgers for the agency account reflected that Husband withdrew over $800,000 from this fund during those years, as Husband confirmed in his testimony at trial. Wife testified that although she was aware the agency account existed, she did not know the amounts in it. Husband did not discuss withdrawals from the account with her, and she did not know of any assets that would have been purchased with the large amounts Husband withdrew.

The evidence also showed that between 2007 and 2012, Husband received distributions from the 1993 Trust in the amount of $991,525. Husband contends these distributions were of both income and principal. In his inventory and appraisement filed before trial,[3] Husband sought reimbursement of the $991,525 in the divorce, describing the basis of the claim as "[p]ayment by Husband's separate property of the unsecured liabilities of the community estate." Husband did not, however, point to evidence showing either the nature and amounts of the unsecured liabilities or showing that the amount distributed to him was his separate property.

After the parties' separation, Husband withdrew $66,000 from the Slicker Family Foundation, an entity created by Husband and Wife together in 2004. This amount was paid in

[3] Husband's inventory and appraisement was admitted into evidence at trial as Wife's Exhibit 2.

"salary" to himself and the parties' adult son John (age thirty-seven at the time of trial) between 2011 and 2013. Husband also paid John's credit card bills and rent during the pendency of the divorce proceedings.

Husband provided no evidence of his disposition of the $800,000 withdrawn from the agency account, the $991,525 distributed from the 1993 Trust, or the $66,000 withdrawn from the foundation. He provided no tracing of any assets he claimed as separate. When asked at trial about the disposition of the $800,000, he stated that he had "no idea" and "can't recall" how he used the money, or a single asset he had purchased. Husband contends that all of the parties' community property was used to "fund the parties' lavish lifestyle." The only evidence of this "lavish lifestyle," however, was Husband's testimony that "[f]or a number of years . . . [w]e enjoyed traveling. We went to Europe and India and China and all over the United States and we entertained people, friends at restaurants and at our house. We spent a lot of money." Husband testified that he and Wife could afford this lifestyle "through income from the Trust and later on through distributions, the principal." Although Wife did not testify to the contrary, Husband points to nothing in the record reflecting when any trips were taken, how much any such trip cost, how much the parties spent in entertainment expenses, or how any travel or entertainment expenses were paid.

The record also showed that Husband frequently corresponded by e-mail with Bancorp, which was also the trustee of the 1993 Trust. Husband routinely requested distributions and submitted expenses to Ron Mills, a trust officer of Bancorp. Husband also kept Mills informed of transactions involving various Cabe entities, including proceeds of approximately $500,000 from sales of timber. The e-mails reflect creation of a limited liability company, Slicker Enterprises LLC, in 2006, and a transfer of approximately $40,000 into that company by deposit of a check from a petroleum company. Husband corresponded with Mills about use of principal from the

–4–

1993 Trust instead of income for particular expenses. Husband also requested the recharacterization of income and principal in the 1993 Trust, and Mills testified at trial that he recalled doing so on at least one occasion in 2007, as reflected on account statements of the 1993 Trust.

The evidence showed that assets normally purchased and held by a community estate were instead purchased and held by the 1993 Trust. Although the evidence showed that Husband and Wife had sufficient funds, including a $67,000 profit from the sale of their previous home, to purchase their home in 1999, the home was instead purchased by the 1993 Trust. Husband also testified that "in the 90's we had $100,000 in an annuity in Switzerland . . . that was cashed in, I believe, and used to pay part of [the purchase price for the house]." Because relevant documents had been requested but not produced in discovery, the trial court sustained Wife's objection to the admission of evidence regarding whether the home was purchased with trust principal or income. The 1993 Trust sold the home during the pendency of the divorce, and purchased a condominium to be used as Husband's residence.

In addition, the evidence reflected that on the day of trial, documents were signed to sell Cablein LLP, an entity that owned a vacation home in Michigan, to another family trust. The 1993 Trust owned an interest in Cablein. Accompanying e-mails between Husband's sister and Mills indicated that "[o]ur goal" in the transaction "is to give [Husband] the opportunity to buy his Cablein share back in the future at the same price." The e-mail to Mills was copied to Husband. When the intended sale was revealed by counsel for Bancorp at trial, the trial court questioned why the sale price for the 1993 Trust's share of Cablein was $100,000 when a current appraisal showed a value of $122,000.

The evidence showed that Wife's monthly net income at the time of trial was $665.80 in Social Security benefits. She testified that her credit cards were paid off at the time of the

–5–

parties' separation, but that Husband ran up the balances again without her permission (with the exception of one $500 charge). Her monthly financial information sheet introduced into evidence at trial showed monthly payments on the credit cards of $2,000, and rent of $995 per month as her largest single expenses. She has borrowed money from her brother to pay her attorney's fees. Linda Castro, a clinical psychologist, testified that she diagnosed Wife with "adjustment disorder with depression and anxiety." Castro testified that Wife was controlled by Husband emotionally and financially. Wife testified that she was sixty-seven years old, had recently taken a computer course, and has tried to seek employment but has been unable to find a job. The only employment she had during the marriage was working for Husband in his business, but she was not paid for this work.

In addition, the trial court found that Husband "substantially failed to comply with discovery requests." The largest number of documents admitted into evidence at trial were produced by Bancorp. These documents and other exhibits introduced at trial reference numerous entities in which the parties had an interest, but were in large part unaccompanied by any explanatory testimony or evidence. In the volume of the reporter's record containing the trial court's ruling, the trial court made the finding of Husband's failure to comply with discovery, and noted that sanctions had already been issued against him. The trial court also stated, "I am concerned that—there was evidence that [Husband] had instructed the bank officer to make distributions from the Trust, but my concern was when he instructed the officer to recharacterize the distribution, that was a major concern of mine and it's an important basis for my ruling."

The trial court rendered a decree of divorce and made findings of fact and conclusions of law. Among the trial court's findings and conclusions were that Husband improperly spent money during the divorce proceedings; Husband substantially failed to comply with discovery

requests; and the value of community property lost to waste or constructive fraud by Husband should be considered in determining the total value of the community estate. The trial court also found that the value of the reconstituted community estate was $900,000; Husband's net resources "are a minimum of $17,500 per month"; Husband should pay spousal maintenance in the amount of $3,500 per month; Wife should be given a judgment of $275,000 against Husband "for his waste and/or constructive fraud committed" against Wife; and Husband should be ordered to pay $62,000 to Wife "for money he improperly spent during the divorce proceedings." This appeal followed.

### STANDARDS OF REVIEW

We review the trial court's division of a community estate for an abuse of discretion. *Moroch v. Collins*, 174 S.W.3d 849, 857 (Tex. App.—Dallas 2005, pet. denied). A trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support the decision. *LaFrensen v. LaFrensen*, 106 S.W.3d 876, 877 (Tex. App.—Dallas 2003, no pet.).

In family law cases, the abuse of discretion standard of review overlaps with the traditional sufficiency standards of review; as a result, legal and factual sufficiency are not independent grounds of reversible error, but instead constitute factors relevant to our assessment of whether the trial court abused its discretion. *Moroch*, 174 S.W.3d at 857. To determine whether the trial court abused its discretion we consider whether the trial court (1) had sufficient evidence on which to exercise its discretion and (2) erred in its exercise of that discretion. *In re A.B.P.*, 291 S.W.3d 91, 95 (Tex. App.—Dallas 2009, no pet.). We then proceed to determine whether, based on the elicited evidence, the trial court made a reasonable decision. *Id.*

In an appeal from a bench trial, an appellate court reviews a trial court's conclusions of law de novo and will uphold them on appeal if the judgment of divorce can be sustained on any

legal theory supported by the evidence. *Reisler v. Reisler*, 439 S.W.3d 615, 619 (Tex. App.—Dallas 2014, no pet). We "may not challenge a trial court's conclusions of law for factual sufficiency, but . . . may review the legal conclusions drawn from the facts to determine their correctness." *Id.* If we determine that a conclusion of law is erroneous, but the trial court nevertheless rendered the proper judgment, the error does not require reversal. *Id.* at 619–20.

When the appellate record contains a complete reporter's record, we review the trial court's findings of fact under the same standards for legal and factual sufficiency that govern the review of jury findings. *Id.* at 620. In evaluating a legal sufficiency challenge, we credit evidence that supports the finding if a reasonable fact finder could, and disregard contrary evidence unless a reasonable fact finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). The test for legal sufficiency is whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *Id.* In a factual sufficiency review, we examine all the evidence in the record, both supporting and contrary to the trial court's finding, and reverse only if the finding is so against the great weight of the evidence as to be clearly wrong and unjust. *In re Marriage of C.A.S. & D.P.S.*, 405 S.W.3d 373, 382–83 (Tex. App.—Dallas 2013, no pet.). In evaluating the trial court's findings of fact, we must give substantial deference to the trial court's determination of the weight and credibility of the evidence. *Reisler*, 439 S.W.3d at 620. In a bench trial, the trial court acts as the fact finder and is the sole judge of the credibility of witnesses. *Id.*

A party seeking to rebut the presumption that property possessed by either spouse during marriage is community property must do so by clear and convincing evidence. TEX. FAM. CODE ANN. § 3.003 (West 2006). When the burden of proof is by clear and convincing evidence, we apply a higher standard of legal and factual sufficiency review. *Moroch*, 174 S.W.3d at 857. Clear and convincing evidence is defined as the "measure or degree of proof which will produce

in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* (quoting TEX. FAM. CODE ANN. § 101.007). This intermediate standard falls between the preponderance standard of civil proceedings and the reasonable doubt standard of criminal proceedings. *Id.* The proof must weigh more heavily than merely the greater weight of the credible evidence, but the evidence need not be unequivocal or undisputed. *Id.* at 857–58.

If an appellate court finds reversible error in any part of the trial court's property division that materially affects the just and right division of the community estate, it must remand for a new division of the entire community estate. *Reisler*, 439 S.W.3d at 620 (citing *Jacobs v. Jacobs*, 687 S.W.2d 731, 732–33 (Tex. 1985)).

## APPLICABLE LAW

### A. Property Division

In a divorce decree, the trial court shall order a division of the parties' estate in a manner that the court deems just and right, having due regard for the rights of each party. TEX. FAM. CODE ANN. § 7.001 (West 2006). When exercising its broad discretion to divide the marital property, the trial court may consider many factors, including the nature of the marital property, the relative earning capacity and business opportunities of the parties, the parties' relative financial condition and obligations, the parties' education, the size of the separate estates, the age, health, and physical conditions of the parties, fault in breaking up the marriage, the benefit the innocent spouse would have received had the marriage continued, and the probable need for future support. *See Murff v. Murff*, 615 S.W.2d 696, 699 (Tex. 1981); *In re Marriage of C.A.S.*, 405 S.W.3d at 384. The property division need not be equal. *Murff*, 615 S.W.2d at 698–99. The party complaining of the division of the community estate has the burden of showing from the evidence in the record that the trial court's division of the community estate was so unjust and unfair as to constitute an abuse of discretion. *In re Marriage of C.A.S.*, 405 S.W.3d at 384.

–9–

Generally, a party who does not provide to the trial court any value for the property cannot, on appeal, complain of the trial court's lack of information in dividing the community estate. *Id.* at 385.

## B. Reconstituted Estate

In *Schleuter v. Schleuter*, the supreme court held there is no independent tort cause of action between spouses for fraud on the community. 975 S.W.2d 584, 585 (Tex. 1998). The court reasoned that a wronged spouse "has an adequate remedy for fraud on the community through the 'just and right' property division upon divorce." *Id.*; *see also In re K.N.C.*, 276 S.W.3d 624, 629 (Tex. App.—Dallas 2008, no pet.) (in making just and right division, trial court may consider spouse's dissipation of community estate as well as spouse's misuse of community property). Section 7.009 of the Texas Family Code, added in 2011,[4] addresses division of property when the trial court has determined that a spouse has committed actual or constructive fraud on the community. *See* TEX. FAM. CODE ANN. § 7.009 (West Supp. 2014). Subsection (b) requires the trial court to "calculate the value by which the community estate was depleted as a result of the fraud on the community and calculate the amount of the reconstituted estate." *Id.* § 7.009(b)(1). "Reconstituted estate" is defined in subsection (a) as "the total value of the community estate that would exist if the actual or constructive fraud on the community had not occurred." *Id.* § 7.009(a). The trial court then must "divide the value of the reconstituted estate between the parties in a manner the court deems just and right." *Id.* § 7.009(b)(2). The trial court may grant any legal or equitable relief necessary to accomplish a just and right division. *Id.* § 7.009(c). The court may grant the wronged spouse "an appropriate share of the community estate remaining after the actual or constructive fraud on the community," or award a money

---

[4] *See* Act of May 16, 2011, 82nd Leg., R.S., ch. 487, § 1, 2011 Tex. Gen. Laws 1243 (codified at TEX. FAM. CODE ANN. § 7.009).

judgment in favor of the wronged spouse, or award "both a money judgment and an appropriate share of the community estate." *Id.*

### C. Spousal maintenance

Under section 8.051 of the Texas Family Code, the trial court may in its discretion order spousal maintenance if the party seeking maintenance meets specific eligibility requirements. *Id.* § 8.051; *see Pickens v. Pickens*, 62 S.W.3d 212, 214–15 (Tex. App.—Dallas 2001, pet. denied). When as here a divorce is sought in a marriage lasting ten years or more, a spouse is eligible to seek spousal maintenance if the spouse lacks sufficient property to meet minimum reasonable needs and lacks the ability to earn sufficient income to provide for minimum reasonable needs. TEX. FAM. CODE ANN. § 8.051(2)(B); *see also Pickens*, 62 S.W.3d at 215. Generally, there is a presumption that maintenance is not warranted unless the spouse has been diligent in seeking suitable employment or is developing skills necessary to become self-supporting. TEX. FAM. CODE ANN. § 8.053; *Pickens*, 62 S.W.3d at 215.

Section 8.052 lists factors to be considered by the trial court in determining the "nature, amount, duration, and manner" of spousal maintenance. TEX. FAM. CODE ANN. § 8.052. These factors include the ability of the spouse seeking maintenance to provide for his or her own minimum reasonable needs independently, considering the spouse's financial resources on dissolution of the marriage; the age, employment history, earning ability, and physical and emotional condition of the spouse seeking maintenance; the duration of the marriage; the availability and feasibility of the education or training necessary to enable the spouse to earn sufficient income; the spouse's contribution as a homemaker, or to the other spouse's education, training, or increased earning power; and the property brought to the marriage by either spouse. *See id.* § 8.052(1)–(4), (7)–(9). In addition, the trial court considers "acts by either spouse

–11–

resulting in excessive or abnormal expenditures or destruction, concealment, or fraudulent disposition of community property." *Id.* § 8.052(6).

The term "minimum reasonable needs" is not defined in the Family Code. *See Cooper v. Cooper*, 176 S.W.3d 62, 64 (Tex. App.—Houston [1st Dist.] 2004, no pet.). A trial court determines whether a party's minimum reasonable needs are met on a fact-specific, individualized, case-by-case basis. *See Amos v. Amos*, 79 S.W.3d 747, 749 (Tex. App.—Corpus Christi 2002, no pet.).

## DISCUSSION

Husband challenges the trial court's reconstitution of the community estate, the division of the estate, and the award of maintenance. He contends that he made only a "modest living" as an insurance salesman, but he and Wife "enjoyed a lavish and extravagant lifestyle" during their marriage that depleted all of their assets. He argues that they funded their expenditures with his family's money through the 1993 Trust, so that the corpus of the trust was almost entirely depleted. He contends that Wife filed for divorce when Husband had no more money.

Wife, on the other hand, contends that the 1993 Trust earned significant income during the marriage. She argues that this income, community property, was used to purchase assets inside the 1993 Trust that Husband then erroneously claimed as separate property, such as the couple's homestead. She also contends that Husband was deliberately depleting the 1993 Trust, constituting fraud on the community.

### A. Reconstituted estate

The trial court granted judgment against Husband for $275,000 "based on [Husband's] breach of fiduciary duty and fraud committed on the community estate." The trial court made a finding of fact that the value of the reconstituted estate is $900,000. In his first issue, Husband challenges the trial court's judgment in the amount of $275,000 to Wife on three grounds. First,

–12–

he contends that if the judgment is based upon a reconstituted community estate, the evidence is legally and factually insufficient to support the trial court's finding of fact that the value of the reconstituted estate is $900,000. Second, he contends that if the judgment is based on breach of fiduciary duty or fraud, the evidence is legally and factually insufficient to support the judgment, and the trial court made no findings of breach of fiduciary duty or fraud. Third, he contends that if the judgment is based upon waste or constructive fraud, the evidence is legally and factually insufficient to support the judgment, and the trial court made no findings of waste or constructive fraud.

In conclusion of law number 7 the trial court stated "[t]he value of the community property lost to waste and/or constructive fraud committed by [Husband] should be considered as part of the total value of property awarded to [Husband]." Although there is not a separate finding of fact that Husband committed waste or constructive fraud, this conclusion of law expressly cites Husband's "waste and/or constructive fraud" as its basis. Similarly, in conclusion of law number 8, the trial court stated that "[Wife] should be given a judgment of $275,000 and postjudgment interest against [Husband] for his waste and/or constructive fraud committed against [Wife]." Although the findings of waste and constructive fraud appear in the trial court's conclusions of law, the designation is not controlling, and we may treat them as findings of fact. *Ray v. Farmers' State Bank of Hart*, 576 S.W.2d 607, 608 n.1 (Tex. 1979).[5] We therefore disagree with Husband that the trial court made no findings of waste or constructive fraud.

Waste occurs when one spouse, dishonestly or purposefully with the intent to deceive, deprives the community estate of assets to the detriment of the other spouse. *See Schleuter*, 975 S.W.2d at 589. Husband contends that because Wife was fully aware of "the parties' financial

---

[5] *See also Fonseca v. Cnty. of Hildago*, 527 S.W.2d 474, 480 (Tex. Civ. App.—Corpus Christi 1975, writ ref'd n.r.e.) (trial court's "transformation of the real character" of finding or conclusion, or finding and conclusion "that might be mixed," is not reversible error; "Whatever their nature makes them, they still are that in substance and effect.").

–13–

situation, including money and bank accounts, because the parties talked about finances frequently," there was no waste, "especially given that [Wife] enjoyed the benefits of these expenditures just as did [Husband]." However, Husband offered no evidence to support this contention except his conclusory testimony about the parties' alleged "lavish and extravagant lifestyle." Although the record reflects that Husband requested money from the 1993 Trust for a few community expenses, there was no attempt by Husband to show that the large amounts of money he withdrew from the 1993 Trust were used for community purposes, or that Wife was aware of the withdrawals. *See Falor v. Falor*, 840 S.W.2d 683, 688 (Tex. App.—San Antonio, 1992, no writ) (evidence supported finding of waste where husband disposed of community assets without knowledge and consent of wife for non-community purposes).

Wife was not questioned about the parties' alleged "lavish lifestyle." She testified she was unaware of the large withdrawals Husband made from the agency account. She offered her own testimony as well as the testimony of her psychologist that Husband controlled the relationship and the finances. As noted, Wife signed at least one letter to Mills allowing Husband to make financial decisions on her behalf. And although Husband testified that Wife had equal control of the parties' joint checking account, Wife testified that she did not, explaining that the single time she attempted to use it after the parties' separation, Husband canceled a spousal maintenance payment to her.

The trial court's finding of the value of the reconstituted estate could be supported by Husband's own claims that he was owed $991,525 from the community for "payment by Husband's separate property of the unsecured liabilities of the community estate." Husband's evidence showed that he received $991,525 in distributions from the 1993 Trust between 2007 and 2012. There was no specific evidence of community liabilities paid in that amount and no tracing of separate property used for the benefit of the community. The trial court then awarded

–14–

Wife $275,000, approximately one-third of the reconstituted estate. Husband did not offer evidence to support his contention that the $991,525 was his separate property, although it was his burden to do so by clear and convincing evidence. *See Moroch*, 174 S.W.3d at 857. On this record, we cannot say the trial court abused its broad discretion in its findings and conclusions or in its division of the community estate. We overrule Husband's first issue.

### B.  Money spent during divorce proceedings

In his second issue, Husband challenges the trial court's judgment to Wife in the amount of $62,000 "representing money that [Husband] spent during the divorce." He contends the evidence was legally and factually insufficient to support the trial court's finding that he "improperly spent money during the divorce proceedings." He contends that the monies were paid for attorney's fees and were paid by the 1993 Trust, not by Husband, and therefore, there was no violation of the trial court's standing order.

The record reflects, however, that during the pendency of the divorce proceeding, between 2011 and 2013, Husband paid himself and his son a total of approximately $66,000. These funds came from the Slicker Family Foundation, an entity created by Husband and Wife together in 2004, not the 1993 Trust. Documents produced by Bancorp and included in the record include financial statements for the Slicker Family Foundation reflecting the amounts paid to Husband and the parties' son John as salaries. This is some evidence to support the trial court's findings that community funds were spent during the pendency of the parties' divorce in violation of the trial court's standing order regarding preservation of property and use of funds during divorce. We overrule Husband's second issue.

### C.  Just and right division of community estate

In his third issue, Husband again challenges the $275,000 and $62,000 awards to Wife. He contends the evidence at trial was that the community estate had a negative value, so the trial

–15–

court failed to make a just and right division of the community estate. He contends that in light of the debts he was ordered to pay by the trial court, the marital estate was "clearly underwater, having a substantial negative value," and the trial court's additional awards to Wife would result in more than 100% of the value of the community estate being awarded to Wife. He concludes that this division is not just and right.

A court may take into account a spouse's dissipation of the community estate when making a just and right division. *Vannerson v. Vannerson*, 857 S.W.2d 659, 669 (Tex. App.—Houston [1st Dist.] 1993, writ denied). As we have discussed, there was evidence to support the trial court's findings that Husband committed "waste and/or constructive fraud"; that the value of the reconstituted community estate was $900,000; and that Husband improperly spent $62,000 during the divorce proceedings. The trial court is afforded broad discretion in dividing the community estate, and we must indulge every presumption in favor of the trial court's proper exercise of discretion. *See Schleuter*, 975 S.W.2d at 589; *In re Marriage of C.A.S.*, 405 S.W.3d at 384. We conclude the trial court had sufficient evidence on which to exercise its discretion, and made a reasonable decision based on the evidence elicited. *See In re Marriage of C.A.S.*, 405 S.W.3d at 383. There was legally and factually sufficient evidence to support the trial court's judgment. *See Reisler*, 439 S.W.3d at 620. We overrule Husband's third issue.

### D. Spousal maintenance

In his fourth issue, Husband contends the trial court abused its discretion by ordering Husband to pay maintenance. He argues that the evidence was legally and factually insufficient to support the trial court's findings relating to maintenance: (1) that Wife exercised diligence in earning sufficient income or developing the necessary skills to provide for her minimum reasonable needs; (2) that Wife was unable to earn sufficient income because of an incapacitating mental or physical disability or that she lacked the ability to earn sufficient income to provide for

–16–

her minimum reasonable needs; (3) that the trial court took into account the statutory factors for determining maintenance; and (4) that Husband's net resources were a minimum of $17,500 per month. Husband also contends there is no or insufficient evidence of the shortest reasonable time period that would allow Wife to earn sufficient income to provide for her minimum reasonable needs.

Husband argues that under section 8.053 of the Family Code, it is a rebuttable presumption that maintenance is not warranted unless the spouse seeking it has exercised diligence in earning sufficient income or developing necessary skills to provide for the spouse's minimum reasonable needs. *See* TEX. FAM. CODE ANN. § 8.053(a). Husband contends there was no evidence introduced to rebut the presumption that maintenance was not warranted.

At the time of trial, Wife was almost sixty-seven years old. At trial, Wife's psychologist testified that Wife had "low self-esteem, high anxiety, depression," and that Wife had lost weight as a result of the divorce proceedings. The psychologist testified that in sixteen sessions, Wife had "grown" and worked on building her self-esteem. Wife testified that she had not been able to find a job. She had taken one computer course as of the time of trial and had signed up to take another. She sent out a resume to Texas Health Resources and worked at the Cooper Clinic for a short period of time. During the marriage, she worked for Husband's business but was not paid for doing so. Husband emphasizes that the associate judge advised Wife to use her best efforts to find employment during the pendency of the divorce proceedings.

The trial court ordered Husband to pay maintenance of $3,500 per month for ten years, except that the maintenance obligation would terminate on the death of either party or with Wife's remarriage or cohabitation. As noted, the trial court made six findings of fact and one conclusion of law relating to its maintenance award, finding that Wife had exercised diligence

–17–

but lacked sufficient property and the ability to earn sufficient income to provide for her minimum reasonable needs.

Other than some unpaid work for Husband's business, the record reflects that Wife has not been in the workplace since 1974 and has no specific education or employment skills that would facilitate her job search. Further, we consider Wife's eligibility for maintenance at the time of the divorce, not whether she will be able to provide for her minimum reasonable needs at some point in the future with additional training or education. *See Deltuva v. Deltuva*, 113 S.W.3d 882, 888 (Tex. App.—Dallas 2003, no pet.) (spouse seeking maintenance who obtained real estate license but needed about one year to get her real estate business "rolling" lacked ability to earn sufficient income). Wife has no resources other than her Social Security benefit with which to support herself. There was also some evidence to indicate that in the years before Husband began dissipating property, his net resources per month were greater than the amount found by the trial court. The distributions from the 1993 Trust alone in each of the three years before the parties' separation, if paid on a monthly basis, were within the range of the trial court's finding. We conclude there was legally and factually sufficient evidence to support the trial court's finding that Wife was eligible to receive maintenance under the factors set forth in section 8.051(2), and that the trial court properly considered the factors listed in section 8.052 in determining the nature, amount, duration, and manner of periodic payments by Husband to Wife. *See* TEX. FAM. CODE ANN. §§ 8.051–8.052. We overrule Husband's fourth issue.

**CONCLUSION**

We conclude the trial court did not abuse its discretion in making a just and right division of the parties' community estate. Having overruled Husband's four issues, we affirm the trial court's judgment.

131762F.P05

/Carolyn Wright/
CAROLYN WRIGHT
CHIEF JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

WILLIAM C. SLICKER, Appellant

No. 05-13-01762-CV      V.

PHYLLIS A. SLICKER, Appellee

On Appeal from the 255th Judicial District Court, Dallas County, Texas
Trial Court Cause No. DF-11-15742.
Opinion delivered by Chief Justice Wright, Justices Fillmore and O'Neill participating.

       In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

       It is **ORDERED** that appellee Phyllis A. Slicker recover her costs of this appeal from appellant William C. Slicker.

Judgment entered May 21, 2015.