# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-21-00332-CV

---

**Jennifer Anne Cannon-Hunter, Appellant**

**v.**

**Bradford L. Hunter, Appellee**

---

### FROM THE 345TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-FM-19-007683, THE HONORABLE CATHERINE MAUZY, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Jennifer Anne Cannon-Hunter appeals the trial court's final decree of divorce dissolving her marriage with Bradford L. Hunter.[1]  In her appellate issue, Jennifer argues that the trial court abused its discretion by failing to award her post-divorce spousal maintenance.  *See* Tex. Fam. Code §§ 8.051–.062 (addressing post-divorce spousal maintenance).   For the following reasons, we affirm the trial court's final decree.[2]

---

[1] Because the parties have similar last names, we refer to the parties by their first names.

[2] The trial court signed a nunc pro tunc final decree of divorce to correct clerical errors that are not at issue in this appeal.

## BACKGROUND[3]

The parties married in October 2009, did not have children, and stopped living together in September 2018. Bradford lived in a home in Texas that he purchased prior to the parties' marriage, and Jennifer lived in a condominium in Illinois that they had purchased in 2018 as a vacation home. In November 2019, Bradford filed a petition for divorce, and in March 2020, Jennifer filed a counterpetition that included a request for post-divorce spousal maintenance. Although Jennifer has a biology degree and other certifications, she did not work during the parties' marriage and remained unemployed during the case. Bradford worked at Texas Instruments and earned sufficient income, including bonuses and stock options, such that Jennifer did not need to work during their marriage.[4]

The final hearing occurred over two days in February 2021. The witnesses were Bradford; Jennifer; and Jennifer's mother, who testified that she loaned Jennifer $37,500 during the parties' separation. Bradford also transferred liquid assets worth about $50,000 to Jennifer during the case. The exhibits included information about Bradford's income; the parties' respective living expenses and budgets; and the parties' debts and assets, including their financial accounts. The primary disputes at trial were the division of the parties' community estate and Jennifer's request for spousal maintenance. Bradford requested that the trial court divide the parties' community estate equally and not award spousal maintenance, and Jennifer requested a 60/40 split in her favor and post-divorce spousal maintenance of $5,000 monthly for five years.

---

[3] Because the parties are familiar with the facts of the case and its procedural history, we do not recite them in this opinion except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* Tex. R. App. P. 47.1. The facts are primarily taken from the evidence admitted during the final hearing.

[4] Bradford testified that his annual "base pay" was $189,000 and that he also received performance bonuses. In 2019, his compensation with bonus was approximately $300,000.

2

*See* Tex. Fam. Code §§ 8.054(a)(1)(A)(ii) (limiting duration of maintenance order generally to five years for spouses married between 10 and 20 years), .055(a) (limiting amount of maintenance to lesser of $5,000 or 20 percent of spouse's average monthly gross income).

Jennifer testified that she was not employed and that she needed around $12,000 per month for her living expenses.[5]  She testified that she was last employed in 2008 as a medication aide and that she had worked as a certified nursing assistant but that "it's not something that [she's] interested in doing."  She also testified that:  (i) she had a dental assistance certification but that it did not transfer to Illinois; (ii) she had photography certifications that she could use to make money if she traveled and was published in a magazine but that she had not done anything to try to do that; and (iii) she had partially completed a real estate course in October or November 2019 but did not pass a portion of the test, and that she last called to try to reschedule retaking the class and test "[a] year ago."[6]  She further admitted that she had "not done anything" to obtain employment "since [Bradford] filed for divorce on [her]."[7]  She

---

[5]  Jennifer, however, admitted that many of the amounts included as monthly expenses were one-time expenses.  For example, she included $697 for a dental treatment plan but admitted that was a one-time expense.  She also included a $700 monthly car payment, but the trial court assigned Bradford the car loan as part of the division of the parties' community estate.

[6]  When asked about registering for the real estate class, Jennifer testified:  "I can call them and register, but I've been battling a divorce this past year and a pandemic.  How could I possibly start that right now?  I mean, with the pandemic, how could I enroll?"

[7]  When asked if it would be accurate to say that after the parties separated, she had not done anything to seek gainful employment, she answered, "No, I haven't."  She also testified as follows:

Q.    Have you done anything to become employed?
A.    No.
Q.    Have you searched for any jobs?
A.    No.
Q.    Have you submitted any job applications?

3

explained that businesses were shut because of the pandemic and that she did not have time to look for a job because of the pending divorce. She, however, admitted going to stores and restaurants and taking riding lessons during the pandemic. She was leasing a horse on a month-to-month basis, which she testified was her "therapy," at a cost of around $1,850 monthly for boarding the horse and lessons. She testified that going forward, she hoped to work in law or finish her real estate certification and admitted that she "probably" would have "plenty of money to live on" for "some limited amount of time" if the trial court divided the marital estate as Bradford proposed.

In its final decree of divorce, the trial court awarded Jennifer substantial property in its division of the parties' community estate but denied her request for spousal maintenance. Among the assets awarded to Jennifer were the condominium in Illinois with a value of over $250,000 and no corresponding debt; the parties' 2013 Cadillac Escalade with no corresponding debt; retirement funds with a value of over $150,000; and liquid assets that included cash, mutual funds, and stocks with a value of over $250,000. The debt assigned to Jennifer was credit card debt of around $20,000. Jennifer filed a motion for new trial, which the trial court denied. This appeal followed.

---

A.    No.
Q.    Have you completed—have you attempted to complete any type of education program to get any type of certification?
A.    Not since the real estate.
Q.    And are you saying that the reason you haven't is because the divorce is pending and [the] pandemic?
A.    Yes.

She also answered, "Yes," when asked if she was "saying that the divorce has been so time consuming" that she had not had time to look for a job.

4

## ANALYSIS

In her appellate issue, Jennifer seeks to reverse the trial court's ruling denying her request for spousal maintenance because she was married for over 10 years and lacked sufficient property, including her separate property, or the ability to earn sufficient income to provide for her minimum needs.

### Standard of Review

"A trial court's decision to award or not award spousal maintenance is reviewed under an abuse-of-discretion standard." *Browne v. Browne*, No. 03-08-00185-CV, 2010 WL 1730066, at *3 (Tex. App.—Austin Apr. 29, 2010, no. pet.) (mem. op.) (citing *Deltuva v. Deltuva*, 113 S.W.3d 882, 888 (Tex. App.—Dallas 2003, no pet.)). "A trial court abuses its discretion if it acts arbitrarily and unreasonably or without regard to guiding rules or principles." *Zeifman v. Michels*, 212 S.W.3d 582, 587 (Tex. App.—Austin 2006, pet. denied) (citing *K–Mart Corp. v. Honeycutt*, 24 S.W.3d 357, 360 (Tex. 2000)).

"Under this standard, legal and factual sufficiency of the evidence are not independent grounds for asserting error but are relevant factors in determining whether the trial court abused its discretion." *Coburn v. Moreland*, 433 S.W.3d 809, 823 (Tex. App.—Austin 2014, no pet.) (citing *Zeifman*, 212 S.W.3d at 587). "In determining whether the trial court abused its discretion, we consider whether the trial court had sufficient evidence upon which to exercise its discretion and, if so, whether it erred in the exercise of that discretion." *Id.* (citing *In re W.C.B.*, 337 S.W.3d 510, 513 (Tex. App.—Dallas 2011, no pet.)). We "consider only the evidence most favorable to the trial court's ruling and will uphold its judgment on any legal theory supported by the evidence." *Id.* (citing *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex.

5

1990)); *see id.* at 823–24 (deferring to trial court's factual resolutions and "any credibility determinations that may have affected those resolutions"). "An abuse of discretion does not occur as long as some evidence of a substantive and probative character exists to support the trial court's decision." *Zeifman*, 212 S.W.3d at 587 (citing *In re P.M.B.*, 2 S.W.3d 618, 622 (Tex. App.—Houston [14th Dist.] 1999, no pet.)).

*Spousal Maintenance*

Post-divorce spousal maintenance is "an award in a suit for dissolution of a marriage of periodic payments from the future income of one spouse for the support of the other spouse." Tex. Fam. Code § 8.001(1). It "is intended to provide temporary and rehabilitative support for a spouse whose ability to support herself has eroded over time while engaged in homemaking activities and whose capital assets are insufficient to provide support." *Browne*, 2010 WL 1730066, at *3; *accord O'Carolan v. Hopper*, 71 S.W.3d 529, 533 (Tex. App.—Austin 2002, no pet.).

Because the parties were married for over 10 years, Jennifer was eligible for spousal maintenance if she showed that on dissolution of the marriage, she lacked "sufficient property" or "the ability to earn sufficient income" to provide for her "minimum reasonable needs." *See* Tex. Fam. Code § 8.051(2)(B). But she also had the burden to rebut the statutory presumption that spousal maintenance was "not warranted" by showing that she had "exercised diligence in": (i) earning sufficient income to provide for her "minimum reasonable needs" or (ii) "developing the necessary skills" to provide for those needs during the parties' "period of separation and during the time the suit for dissolution of the marriage [was] pending." *See id.*

6

§ 8.053(a); *In re McCoy*, 567 S.W.3d 426, 429–30 (Tex. App.—Texarkana 2018, no pet.) (noting that burden was on spouse seeking spousal maintenance to rebut presumption when it applies).

*Did the trial court abuse its discretion by denying spousal maintenance?*

As support for her contention that the trial court abused its discretion when it denied her request for spousal maintenance, Jennifer relies on her unemployment at the time of trial, Bradford's "salary and the huge disparity of income," her monthly expenses of around $12,000, and the nature of the assets that the trial court awarded to her.[8] She concedes that she was awarded "substantial property" but argues that "does not disqualify her from spousal maintenance eligibility, especially because the nature of the property awarded to [her], a condo, investment accounts and stocks are not of the nature that produces income or are easily liquidated to cash, and if they are liquidated, they are subject to a tax, or penalty." Jennifer contends that she should not be required to liquidate assets or incur new debts to meet her needs in the short term. *See Truehart v. Truehart*, No. 14-02-01256-CV, 2003 WL 22176626, at *3 (Tex. App.—Houston [14th Dist.] Sept. 23, 2003, no pet.) (mem. op.) (considering that "almost half of community assets" awarded to spouse were not easily liquidated, such as life insurance policies, or could not be liquidated without penalty, such as retirement accounts, in determination that trial court did not abuse discretion in awarding spousal maintenance). She states that she "is simply seeking temporary and rehabilitative support to be able to meet her minimum reasonable needs during the time she re-establishes her career and obtains gainful employment."

---

[8] Jennifer also relies on the factors in determining maintenance that are listed in section 8.052 of the Texas Family Code, but a trial court considers those factors to "determine the nature, amount, duration, and manner of periodic payments" only after the court has "determine[d] that a spouse is eligible to receive maintenance under this chapter." *See* Tex. Fam. Code § 8.052.

7

Jennifer, however, fails to address the statutory presumption that spousal maintenance was not warranted and the evidence supporting findings that she had not "exercised diligence" in either (i) "earning sufficient income" to provide for her "minimum reasonable needs" or (ii) "developing the necessary skills" to provide for her needs while the parties were separated and the divorce proceeding was pending. Tex. Fam. Code § 8.053(a); *see Day v. Day*, 452 S.W.3d 430, 434–35 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (describing evidence that was sufficient to rebut statutory presumption that spousal maintenance was not warranted). Although Jennifer testified about the impact of the pandemic and the pending divorce on her circumstances, the trial court reasonably could have found that Jennifer had not "exercised diligence" in earning sufficient income. *See* Tex. Fam. Code § 8.053(a)(1). The parties were separated for six months prior to the pandemic, and Jennifer, who had a college degree and other certifications, admitted that she had gone to restaurants, shopped in person, and gone to her riding lessons during the pandemic but that she had not applied for any jobs, including any virtual jobs. She also did not take any steps to use her college degree or photography certifications to earn income. *See Coleman v. Coleman*, No. 02-09-00155-CV, 2009 WL 4755173, at \*3 (Tex. App.—Fort Worth Dec. 10, 2009, no pet.) (mem. op.) (concluding that there was insufficient evidence to support awarding spousal maintenance when spouse's "only" testimony was that she "looked into" getting job and that she made $500 in previous two years). The trial court also reasonably could have found that after the parties were separated and during the pendency of the case, Jennifer had made very little effort to develop skills to provide for her needs. *See* Tex. Fam. Code § 8.053(a)(2). Jennifer testified about a real estate course and test that she had not passed, but she admitted that she had not done anything to complete the course after October or November 2019.

8

Given the lack of evidence that Jennifer "exercised diligence" in either earning sufficient income or developing skills to provide for her needs, we conclude that the trial court reasonably could have found that Jennifer failed to rebut the presumption that spousal maintenance was not warranted. *See In re McCoy*, 567 S.W.3d at 430 (concluding that trial court abused discretion in awarding spousal maintenance and that evidence was insufficient to overcome presumption because there was "paucity of evidence . . . that [spouse] was diligent in earning sufficient income to provide for her minimum reasonable needs" and "there was a complete absence of evidence that she was diligent in developing the skills necessary to meet those needs"); *Browne*, 2010 WL 1730066, at *4 (considering presumption that spousal maintenance was not warranted in determining that trial court did not abuse its discretion in denying spouse's request even though spouse was not employed at time of final hearing).

Jennifer compares her situation with the spouse who was awarded spousal maintenance in *In re McFarland*, 176 S.W.3d 650, 658–59 (Tex. App.—Texarkana 2005, no pet.). But in that case, the spouse began working outside the home after the divorce was filed, and the trial court concluded that she "had exercised diligence in attempting during the pendency of the divorce to obtain suitable employment" and that she needed "re-training or education in order to develop the necessary skills to become self-supporting." *Id.* at 652, 654–55. The trial court also concluded that the spouse had a limited earning capacity of "only $7 to $9 per hour" and that the "financial resources available to [her] at the time of the divorce were not sufficiently liquid to enable her to meet her minimum reasonable monthly needs." *Id.* The significant assets awarded to the spouse were a home with a mortgage and a retirement account that she would not have access to until she retired without "severe tax consequences." *Id.* at 657. In contrast, the evidence before the trial court here supported a finding that Jennifer had not "exercised

diligence" in either earning sufficient income or developing skills to provide for her needs. Jennifer also was awarded a vehicle and place to live without any corresponding debts, and the trial court could have found credible the evidence that showed that a significant portion of the assets awarded to Jennifer could be liquidated. For example, as to the stocks in the community estate, Bradford testified they could be transferred in a few days and that although Jennifer would be responsible for taxes on the sale of the stocks, "[n]ormally after you do a market sale on the same day, you receive a check within 2 to 3 weeks for cash." Jennifer also admitted that she "probably" would have "plenty of money to live on" for "some limited amount of time" if the trial court divided the marital estate as Bradford proposed.

For these reasons, we conclude that the trial court did not abuse its discretion in denying Jennifer's request for spousal maintenance and overrule her issue.[9]

## CONCLUSION

Having overruled Jennifer's issue, we affirm the trial court's final decree of divorce.

---

[9] Because we have concluded that Jennifer failed to rebut the presumption for the reasons stated above, we do not further address Bradford's additional arguments about Jennifer's "minimum reasonable needs." *See* Tex. R. App. P. 47.1; *see also Slicker v. Slicker*, 464 S.W.3d 850, 860 (Tex. App.—Dallas 2015, no pet.) (noting that "reasonable minimum needs" is not defined in Texas Family Code and that trial court determines whether spouse's "minimum needs are met on fact-specific individualized, case-by-case basis"); *Giesler v. Giesler*, No. 03-08-00734-CV, 2010 WL 2330362, at *10 (Tex. App.—Austin June 10, 2010, no pet.) (mem. op.) (addressing "minimum reasonable needs").

_____

Rosa Lopez Theofanis, Justice

Before Justices Baker, Triana, and Theofanis

Affirmed

Filed:   February 16, 2023