**Reversed and Rendered and Remanded and Opinion Filed May 31, 2023**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-22-00040-CV

## IN THE INTEREST OF B.P. AND S.P., CHILDREN

**On Appeal from the 255th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DF-20-04783**

## MEMORANDUM OPINION

Before Chief Justice Burns, Justice Molberg, and Justice Reichek
Opinion by Justice Reichek

Quy Pham ("Husband") appeals the trial court's final decree of divorce. In three issues, Husband contends the trial court abused its discretion in awarding spousal maintenance to Trang Le ("Wife") and in characterizing two automobiles—a Lamborghini and a GMC Sierra truck—as community property and including them in the property division. For reasons that follow, we reverse the trial court's award of spousal maintenance and render judgment that Wife take nothing on her request for spousal maintenance. We also reverse the portion of the trial court's judgment that divides the community estate and remand for a new division of the community property.

## BACKGROUND

The parties married in April 1998 and ceased to live together as spouses in April 2019. They have three daughters, but only one was a minor at the time of trial, and the child-related provisions of the decree are not at issue in this appeal. Husband filed for divorce in March 2020. Wife filed a counter petition for divorce, alleging Husband committed adultery. Wife's counter petition included a request for spousal maintenance.

In September 2021, the trial court conducted a bench trial via Zoom during which it heard testimony from Husband, Wife, Husband's girlfriend Trang Do, and others. Husband initially denied that Do was his girlfriend, but later admitted they met in August 2019 and started dating six months later. It is undisputed that Husband, who works as a general contractor, built Do a custom home in 2021 without charging his fee of 10-12%.

In the divorce decree, the trial court found that Wife was eligible for spousal maintenance under the Texas Family Code and ordered Husband to pay her $5,000 per month for the earlier of 7 years or until she remarries or resides with someone she is in a relationship with. The decree recites that the court found Husband used community funds to build a home for Do, purchase jewelry and vehicles for her, and make other expenditures for her benefit. In dividing the community estate, the property awarded to Wife included the marital home in Cedar Hill, a restaurant supply business the parties owned with Wife's brother, a 2017 Honda Accord, a

2005 Ferrari, a 2018 GMC Sierra, and 2018 Mastercraft boat. In addition, the trial court ordered the sale of a Lamborghini, with the proceeds to be divided equally by Husband and Wife. This appeal followed.

### SPOUSAL MAINTENANCE

In his first issue, Husband contends the trial court abused its discretion in awarding Wife spousal maintenance. He argues Wife was not eligible for spousal maintenance because there was no evidence she lacked sufficient property to provide for her minimum reasonable needs, no evidence she is unable to earn sufficient income to meet her minimum reasonable needs, and no evidence of her minimum reasonable needs.

We review the trial court's decision to award spousal maintenance under an abuse of discretion standard. *Tellez v. Tellez*, 345 S.W.3d 689, 691 (Tex. App.—Dallas 2011, no pet.). The trial court abuses its discretion when it acts arbitrarily or unreasonably, or without any reference to guiding rules and principles. *Id.*

The purpose of spousal maintenance is to provide temporary and rehabilitative support for a spouse whose ability to support herself has eroded over time while engaged in homemaking activities and whose capital assets are insufficient to provide support. *Id.* Under section 8.051 of the family code, a trial court has discretion to order spousal maintenance if the party seeking maintenance meets specific eligibility requirements. *Slicker v. Slicker*, 464 S.W.3d 850, 859 (Tex. App.—Dallas 2015, no pet.). When, as here, the marriage lasted ten years or more,

–3–

a spouse is eligible to seek spousal maintenance if she lacks sufficient property on dissolution of the marriage to provide for her minimum reasonable needs and lacks the ability to earn sufficient income to provide for her minimum reasonable needs. TEX. FAM. CODE ANN. § 8.051. There is a statutory presumption that spousal maintenance is not warranted, which can be rebutted by showing the spouse exercised diligence in earning sufficient income to provide for her minimum reasonable needs or developing the necessary skills to provide for those needs during the parties' period of separation and during the time the suit for dissolution of the marriage was pending. *Id.* § 8.053(a).

The term "minimum reasonable needs" is not defined in the family code. *Slicker*, 464 S.W.3d at 859. A trial court determines whether a party's minimum reasonable needs are met on a fact-specific, individualized, case-by-case basis. *Id.*

Wife has an accounting and finance background. She obtained an accounting degree in the mid-1990s. Wife was the CFO for Global Electronics, a company the parties owned, from its inception in 1996 until it went out of business in 2015 or 2016. After that, she was a stay-at-home mom. Wife started a contract job as a payroll analyst on June 7, 2021. The job was guaranteed for six months. She did not say how much she was being paid in that position. She looked for work during the marriage and was still looking. She tried to find jobs in accounting, management, and finance management, but had only one or two interviews a year since 2019.

Wife testified the mortgage payment on the parties' 6400 square foot house was $2848 per month and that the property taxes were $17,000 annually. When asked why she needed spousal maintenance, Wife mentioned "the financials in the house" and indicated the home needed "a lot of maintenance." She also mentioned "the basic needs," such as "rent and property tax, the utility bills, the insurance and the cars." She testified her monthly expenses were over $11,000.

To demonstrate she is eligible for spousal maintenance, Wife was required to prove she lacks sufficient property and sufficient earning ability to meet her minimum reasonable needs. Wife did not present evidence of her minimum reasonable needs. While there was evidence her expenses were about $11,000 a month, there was no evidence of what that amount included. Wife did not expressly state that it included the mortgage payment or prorated property taxes or any other expenses. Nor was there evidence $11,000 was a reasonable amount or evidence that amount represented Wife's minimum reasonable needs. *See Petra v. Petra*, No. 04-09-00214-CV, 2010 WL 374388, at *2 (Tex. App.—San Antonio Feb. 3, 2010, no pet.) (mem. op.) (evidence of amount of wife's monthly bills was insufficient to show expenses were reasonable or represented wife's minimum reasonable needs).

Even if Wife had demonstrated what her minimum reasonable needs were, she did not prove she lacked sufficient property on dissolution of the marriage to provide for those needs. The property awarded to Wife included the parties' home, the restaurant supply business, a Ferrari, and a boat. There was no evidence of the

value of most of that property. Wife testified Mega Restaurant Supply was still in business and was breaking even, but there was no testimony about the income the business provided. Wife did not show the extent to which the property awarded to her could be used to provide for her minimum reasonable needs. *See id.*

To show she is entitled to spousal maintenance, Wife cites evidence of Husband's adultery, excessive expenditures, and fraudulent disposition of community property. While a trial court is entitled to consider these factors in determining the *amount* and *duration* of spousal maintenance payments, the factors apply only once the court has determined the spouse is eligible to receive maintenance. *See* TEX. FAM. CODE ANN. § 8.052(6) & (10); *Howe v. Howe*, 551 S.W.3d 236, 257 (Tex. App.—El Paso 2018, no pet.). The problem in this case is Wife's failure to demonstrate she was eligible for spousal maintenance in the first instance. Wife failed to prove what her minimum reasonable needs were or prove she lacked sufficient property on dissolution of the marriage to provide for those needs. We thus conclude the trial court abused its discretion in awarding spousal maintenance to her. We sustain Husband's first issue.

## DISPOSITION OF VEHICLES

In his second issue, Husband asserts the trial court abused its discretion in characterizing a Lamborghini L740 as community property. In his third issue, he contends the trial court abused its discretion in characterizing a 2018 GMC Sierra as community property. Husband argues the Lamborghini was not community

–6–

property because his girlfriend Do purchased it and argues the GMC Sierra was not community property because he traded it in before trial. We agree with Husband about the GMC Sierra.

Upon granting a divorce, a trial court must order a division of the parties' community estate in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage. TEX. FAM. CODE ANN. § 7.001. Community property consists of property, other than separate property, acquired by either spouse during marriage. *Id.* § 3.002. Property possessed by either spouse during or on dissolution of marriage is presumed to be community property. *Id.* § 3.003(a). We review a trial court's property division for an abuse of discretion. *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981). In family law cases, the traditional sufficiency standard of review overlaps with the abuse of discretion standard, so legal and factual sufficiency are not independent grounds of error, but are relevant factors in our assessment of whether the trial court abused its discretion. *Dahl v. Dahl*, No. 05-07-01338-CV, 2009 WL 866199, at *1 (Tex. App.—Dallas Apr. 2, 2009, no pet.) (mem. op.).

**Lamborghini**

Husband did not present any documentary evidence to support his claim that he did not purchase or own the Lamborghini.[1] Without such evidence, the issue of

---

[1] No exhibits were admitted into evidence at trial from either side. Both parties had asked for a continuance of the trial setting. They did not submit their exhibits because they expected the court

–7–

whether the Lamborghini was community property came down to a credibility determination. Evidence showed Husband had a penchant for vehicles. Wife testified Husband was always "in and out of cars." Chen Lan Tran, who is married to Husband's brother, testified Husband "has different types of cars" and she could not keep up with his cars.

Two months before trial, Wife saw the Lamborghini at Husband's new home when they had their daughter's birthday party there. The car was white. Wife testified Husband likes white cars and had owned several white cars. Wife testified Husband was using the Lamborghini to "take care of his girlfriend." Tran had also seen Husband driving the Lamborghini. Husband told Tran "they"—meaning he and Do—bought a Lamborghini. In 2021, Husband bragged about his income to Tran, claiming he could easily make half a million dollars in four to six months.

When asked if he recently bought a Lamborghini, Husband said the Lamborghini was not his; it belonged to Do. Husband denied giving Do the money to buy the car, which he said had a value of $300,000. He denied telling anyone it belonged to him.

Wife called Do as a witness. Do testified she bought the Lamborghini in June 2021 and chose the color herself. Husband went with her to buy it. She put down $200,000 on the car, and her monthly payment was $3,000.

_____

to grant a continuance. The continuance was instead denied, and the trial court refused to allow the untimely exhibits.

Wife's counsel asked Do questions about her financial situation in an effort to show Do did not have the resources to purchase the Lamborghini. Do worked at a "nail shop" for the last seven years. In 2019, her income was about $70,000, and in 2020, it was $47,000. She testified about money she received from the sale of two houses in the spring of 2021, a good portion of which she spent on her new house.

There was also evidence Husband purchased expensive items for Do from Chen Lan Tran. Tran testified that between November 2020 and February 2021, Husband bought a $37,000 4.5 carat diamond ring, for which he paid cash, a $1,000 tennis bracelet, and an $8,500 Rolex watch. Husband denied buying those items and said Do bought them herself. Do testified she bought the items for herself from Tran.

The record reflects issues with the credibility of Husband's testimony regarding Do. He first denied that she was his girlfriend, but later admitted it. Because a determination of who owned the Lamborghini hinged on the credibility of the witnesses, we defer to the trial court's determination that Husband acquired the vehicle during the marriage. The trial court did not abuse its discretion in determining that Husband failed to demonstrate the Lamborghini was not community property.

Under this issue, Husband raises other arguments based on the premise that the Lamborghini belonged to Do. For example, he argues the trial court violated Do's due process rights by ordering the sale of the car when Do was not a party to

the lawsuit.[2] Even if Husband had standing to complain of a violation of Do's constitutional rights, *see Andrade v. NAACP of Austin*, 345 S.W.3d 1, 15 (Tex. 2011), these additional arguments fail because the trial court determined the car did not belong to Do. *Cf. Fisher v. Fisher*, No. 05-19-01422-CV, 2021 WL 2410784, at *2 (Tex. App.—Dallas June 14, 2021, no pet.) (mem. op.) (where third parties claimed ownership of marital property, trial court could have found their testimony not credible and thus did not abuse its discretion in failing to join them in legal action). We overrule Husband's second issue.

**GMC Sierra**

Husband argues the 2018 GMC Sierra was not community property because the parties no longer owned the vehicle at the time of trial. Wife's appellate brief does not mention the GMC Sierra; she instead provides argument about whether a Ford F-350 truck was community property.

Husband testified about three trucks he had owned, two GMCs and one Ford. He denied owning a car at the time of trial and testified his most recent vehicle had been a Ford F-350 truck. He stated he sold that truck about a month before trial to

---

[2] In a second amended counter petition, filed the month before trial, Wife named Do as a counter-respondent. Do is mentioned only in conjunction with Wife's request for an accounting because Husband allegedly spent money on or transferred money or property to Do. It is unclear what relief Wife sought from Do. Under rule of civil procedure 38, Wife was required to obtain leave of court to bring in a third party at that time. *See* TEX. R. CIV. P. 38. Nothing in the record indicates leave was granted. Do was not treated as a party at trial and was not named as a party in the divorce decree.

put toward his daughters' college expenses. On cross-examination, he was asked what happened to the "GMC Sierra 2500." He testified he traded it in to upgrade to another GMC, a "3500." He testified he no longer owned the 3500. He traded it in about a year before trial in exchange for the F-350. To summarize Husband's testimony, during the marriage, he owned a GMC Sierra 2500, which he traded in for a GMC Sierra 3500, which he then traded in for a Ford F-350, which he sold shortly before trial.

In questioning Wife about the trucks, Wife's trial counsel seems to have confused the numbers of the GMC truck models—2500 and 3500—with the number of the Ford model, F-350. Wife testified that when Husband filed for divorce (in March 2020) they owned five vehicles, one of which was a truck, a GMC Sierra 3500. Her counsel then asked about the loan value on "that truck the F-350" and whether Husband told her he sold the truck. Wife testified Husband had not told her he sold the truck. Then counsel asked about the loan value on the truck when Husband traded the F-250 in to get an F-350, apparently meaning to refer to the GMC 2500 and the GMC 3500. Wife answered. Counsel next asked if Wife knew whether Husband still owned the F-350. Wife testified she knew Husband still owned the F-350 because in July 2021, her nephew "drove that Ford . . . over to my house."

Wife asserts that, as with the Lamborghini, there was conflicting evidence about the GMC Sierra and the trial court did not abuse its discretion in crediting

Wife's evidence. As evidence the GMC Sierra was community property, however, Wife relies on her testimony that she saw her nephew driving the Ford F-350 two months before trial. She has not directed us to evidence the parties owned the GMC at the time of trial, nor have we found any. Evidence she saw the nephew driving the Ford two months before trial is consistent with Husband's testimony that he traded in the GMC Sierra 3500 for the Ford F-350 about a year before trial. It is also not inconsistent with Husband's testimony that he sold the Ford a month before trial.

In addition, the trial court took judicial notice of an associate judge's findings made on March 26, 2021, in connection with temporary orders. The findings do not mention a GMC. They permit Husband to have temporary use and possession of a "Ford F350 truck." This is again consistent with Husband's testimony that he traded in the GMC Sierra for a Ford truck.

The trial court erroneously determined the 2018 GMC Sierra was community property at the time of dissolution of the marriage. This error materially affected the just and right division of the community estate in that Wife's portion of the community included a vehicle that a third party owned. *See Jones v. Jones*, No. 02-13-00133-CV, 2014 WL 4105264, at *1 (Tex. App.—Fort Worth Aug. 21, 2014, pet. denied) (mem. op.) (inclusion of real property that had been sold as community asset distorted value of community estate). Husband asks us to simply vacate the award of the vehicle to Wife, but that is not the proper remedy. If an appellate court finds reversible error in any part of the trial court's property division that materially

–12–

affects the just and right division of the community estate, it must remand for a new division of the entire community estate. *Jacobs v. Jacobs*, 687 S.W.2d 731, 732–33 (Tex. 1985); *Reisler v. Reisler*, 439 S.W.3d 615, 620 (Tex. App.—Dallas 2014, no pet.); *see Wolf v. Nygard*, No. 05-19-01214-CV, 2021 WL 3234348, at *2 (Tex. App.—Dallas July 29, 2021, no pet.) (mem. op.). Accordingly, we reverse that portion of the trial court's judgment that divides the community estate and remand for a new property division. We sustain Husband's third issue.

In conclusion, we reverse and render in part and reverse and remand in part. We reverse the portion of the final decree of divorce awarding Wife spousal maintenance and render judgment denying Wife's request for such maintenance. We also reverse that portion of the decree that divides the community estate and remand for a new property division.

220040f.p05

/Amanda L. Reichek//
AMANDA L. REICHEK
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF B.P. AND
S.P., CHILDREN

No. 05-22-00040-CV

On Appeal from the 255th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DF-20-04783.
Opinion delivered by Justice
Reichek. Chief Justice Burns and
Justice Molberg participating.

In accordance with this Court's opinion of this date, the portion of the trial court's final decree of divorce awarding Trang Le spousal maintenance is **REVERSED** and judgment is **RENDERED** that Trang Le take nothing on her request for spousal maintenance.

Also, that portion of the final decree of divorce that divides the community estate is **REVERSED AND REMANDED** for a new property division.

It is **ORDERED** that each party bear his or her own costs of this appeal.

Judgment entered this 31st day of May 2023.