

In The

Court of Appeals

Seventh District of Texas at Amarillo

No. 07-22-00069-CV

IN THE MATTER OF THE MARRIAGE OF CASSANDRA JOY JOHNSTON AND
WALTER LYNN JOHNSTON AND IN THE INTEREST OF P.L.J. AND B.O.J.,
CHILDREN

On Appeal from the 237th District Court
Lubbock County, Texas
Trial Court No. 2019534357, Honorable Les Hatch, Presiding

May 2, 2023

MEMORANDUM OPINION

Before PARKER and DOSS and YARBROUGH, JJ.

Walter Lynn Johnston ("Lynn"), appellant, appeals a final decree of divorce and a judgment of enforcement deriving from temporary orders entered during the pendency of the divorce proceeding. We modify the enforcement judgment and affirm it as modified and affirm the divorce decree.

## FACTUAL AND PROCEDURAL BACKGROUND

Lynn and Cassandra Johnston, appellee, were married on October 7, 2000. Cassandra filed for divorce on February 28, 2019. During the marriage, the couple had

two children. One of the children became an adult during the pendency of the divorce, while the other, B.J., remains a minor and has significant disabilities that require special education and care.

A hearing was held in April of 2019. Based on evidence adduced at this hearing, the trial court entered temporary orders. Among other things, these orders found that Lynn's net monthly resources were $5,010.00 and obligated him to pay monthly expenses of $1,253.00 in child support, half of the mortgage on the community home, premiums to insure his life, cell phone expenses, and lease payments for a 2018 Lincoln MKC and 2017 Chevrolet Suburban in Cassandra's possession.[1]

Cassandra subsequently filed a motion for enforcement and contempt complaining that Lynn had failed to make timely and full payment of child support or pay half of unreimbursed health care expenses, mortgage payments, automobile payments, cell phone payments, and life insurance premiums. As a result of these failures, Cassandra alleged that she incurred overdraft fees, was assessed tax penalties related to the withdrawal of funds from her IRA account, and was forced to sell certain household items.

The trial court heard Cassandra's enforcement and contempt motions along with the divorce action. In December of 2021, the trial court entered judgments of enforcement and contempt[2] and a final divorce decree. The enforcement judgment awarded

---

[1] According to Cassandra's brief, these monthly obligations amounted to a total of $4,640.06. According to Lynn's brief, these obligations amounted to over $6,000. The temporary orders do not identify the specific amounts for any of these obligations other than child support.

[2] Lynn filed an original proceeding challenging the trial court's contempt judgment. This Court conditionally granted mandamus relief to Lynn and directed the trial court to vacate its contempt judgment. *In re Johnston*, No. 07-22-00177-CV, 2022 Tex. App. LEXIS 9269, at *9 (Tex. App.—Amarillo Dec. 20, 2022, orig. proceeding) (mem. op.).

2

$37,187.08 to Cassandra, representing funds Cassandra paid to third-party creditors on Lynn's behalf, fees incurred by Cassandra for early withdrawal of IRA funds, and decrease in the value of the marital estate. The trial court also awarded Cassandra $15,000 in attorney's fees in the enforcement judgment. The divorce decree, inter alia, ordered Lynn to pay $1,840 in monthly child support for the life of B.J. or further order of the court, awarded Cassandra $72,042.87 from the sale of the marital home, ordered Lynn to pay Cassandra $3,350 as reconstitution of the community estate, and ordered Lynn to pay Cassandra $25,000 in attorney's fees. Lynn requested the entry of findings of fact and conclusions of law, which the trial court issued. Lynn then filed notice of appeal of the final divorce decree, the enforcement judgment, and the contempt judgment.[3]

By his appeal, Lynn presents five issues. By his first issue, he contends that the award of a "decrease in value of the marital estate" is an abuse of discretion because there is no evidence of a decrease in value, Cassandra was equally liable, and the award constitutes a double recovery. Lynn's second issue contends that the award of the proceeds from the sale of the marital residence plus additional damages is an excessive recovery. By his third issue, Lynn contends that the reconstitution award represents excessive and duplicative amounts that are not supported by the record. Lynn's fourth issue contends that the trial court abused its discretion by awarding duplicative attorney's fees in the enforcement and contempt judgments. Finally, Lynn's fifth issue contends that

---

[3] Lynn acknowledges in his notice of appeal that a judgment of contempt is only reviewable by mandamus. As previously mentioned, we conditionally granted Lynn's mandamus petition and ordered the trial court to vacate its contempt judgment. *See In re Johnston*, 2022 Tex. App. LEXIS 9269, at *9.

3

the trial court erred when it refused to consider Lynn's other child when calculating child support and by ordering child support for the life of B.J.

## STANDARD OF REVIEW

A trial court is tasked with ordering a division of the community estate "in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage." TEX. FAM. CODE ANN. § 7.001.[4] A division of the marital estate need not be equal if an unequal division is equitable. *O'Carolan v. Hopper*, 414 S.W.3d 288, 311 (Tex. App.—Austin 2013, no pet.) (op. on reh'g). The division of a marital estate is reviewed for abuse of discretion. *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981). A trial court abuses its discretion when it acts arbitrarily or unreasonably, or without reference to guiding rules and legal principles. *Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011). However, the mere fact that a trial judge may decide a matter within its discretionary authority in a different manner than an appellate judge would in a similar situation does not demonstrate that an abuse of discretion has occurred. *Sw. Bell Tel. Co. v. Johnson*, 389 S.W.2d 645, 648 (Tex. 1965). We begin with the presumption that the trial court properly exercised its discretion in dividing a community estate, and the appellant bears the burden to show from the record that the division was so disproportionate and unfair as to constitute an abuse of discretion. *O'Carolan*, 414 S.W.3d at 311.

When we review a family law case under the abuse of discretion standard, challenges to the sufficiency of the evidence do not constitute independent grounds of

---

[4] Further references to provisions of the Texas Family Code will be by reference to "section __" or "§ __."

4

error but are relevant factors in determining whether the trial court abused its discretion. *Van Hooff v. Anderson*, No. 07-14-00080-CV, 2016 Tex. App. LEXIS 466, at *8 (Tex. App.—Amarillo Jan. 14, 2016, no pet.) (mem. op.) (citing *Boyd v. Boyd*, 131 S.W.3d 605, 611 (Tex. App.—Fort Worth 2004, no pet.)). In determining whether the trial court abused its discretion by deciding an issue without sufficient evidentiary support, "we engage in a two-pronged inquiry: (1) [d]id the trial court have sufficient evidence upon which to exercise its discretion and (2) [d]id the trial court err in its application of that discretion?" *Id.* (quoting *Boyd*, 131 S.W.3d at 611).

## AWARD FOR DECREASE IN VALUE OF MARITAL RESIDENCE

By his first issue, Lynn contends that the trial court's enforcement award of $21,550.47 to Cassandra reflecting the decrease in value of the marital residence constitutes an abuse of discretion because there is no evidence of a decrease in value, Cassandra shared equal liability for the deficiency, and the award constitutes a double recovery.

Initially, we note that the award for a "decrease in value of the marital residence" was not supported by sufficient evidence. To establish a diminution of value, evidence must establish the value of the property prior to any damage and the value of the property after repairs are made. *See Contreras v. Bennett*, 361 S.W.3d 174, 181 (Tex. App.—El Paso 2011, no pet.). Here, no evidence was presented establishing the value of the home before the mortgage became delinquent and no evidence was presented to show how the value of the home was diminished by the failure to pay the mortgage. Rather, Lynn's failure to pay the mortgage is more accurately characterized as a failure to comply with

5

his obligations under the temporary order. As such, we reform the enforcement judgment to reflect that this award is an enforcement of the trial court's temporary orders rather than as a decrease in value of the marital residence.

In its temporary order, the trial court ordered Lynn to pay one-half of the mortgage on the marital residence. In its enforcement judgment, the trial court expressly states that the $21,550.47 decrease in value of the marital residence is based on Lynn's failure to pay one-half of the monthly mortgage payments. Cassandra admitted loan statements that reflected that, at the time the marital residence sold, the mortgage was $21,550.47 delinquent. When questioned about this delinquency, Lynn agreed that his failure to comply with the temporary orders resulted in half of that delinquency, or $10,775.23. Thus, the evidence established that Lynn's violations of the temporary order created a $10,775.23 deficiency. The record does not include evidence that Lynn's failure to pay half of the mortgage on the marital residence resulted in a $21,550.47 deficiency. Consequently, we conclude that the trial court's award of $21,550.47 is not supported by evidence and constitutes an abuse of discretion. *Boyd*, 131 S.W.3d at 611.

Cassandra argues that the trial court made findings of adultery, fraud, community waste, and constructive fraud, which would justify it awarding the cash proceeds from the sale of the residence to Cassandra. However, we are mindful that the decrease in value award was made as part of an enforcement of the trial court's temporary orders, which was entered prior to the trial court making any of those findings. Cassandra also contends that the award of the decrease in value of the home "make[s] right the inequity of Lynn's failure to make his half of the mortgage while Cassandra paid hers." The evidence reflects

6

that neither party complied with the temporary orders, which caused this delinquency to accrue.

Lynn argues that any award for his failure to make mortgage payments as ordered in the temporary order was remedied by the trial court awarding all proceeds from the sale of the marital residence to Cassandra. However, because Lynn failed to pay for his half of the mortgage under the terms of the temporary orders, the proceeds from the sale of the marital residence were decreased in an amount equal to the size of this delinquency. As such, the trial court did not abuse its discretion in making an award against Lynn for failure to comply with the temporary orders by paying half of the mortgage payments.

The record does reflect evidence that Cassandra made certain payments of the mortgage from her personal account and that these payments, at times, included Lynn's obligation and late fees that were assessed for the parties' failure to comply with their obligations. However, it appears that the trial court took these payments into consideration when it awarded Cassandra $12,986.61 for payments she made on Lynn's behalf. This award is challenged by Lynn in his next issue and will be addressed below.

In enforcement of the trial court's temporary orders, the evidence establishes that Lynn's failure to comply with the requirements of the temporary order resulted in a $10,775.23 mortgage delinquency. We conclude that the trial court's $21,550.47 decrease in value award is an abuse of discretion and modify the enforcement judgment to award Cassandra $10,775.23 as enforcement of Lynn's obligation to pay half of the mortgage under the temporary orders.

7

We sustain Lynn's first issue.

## THIRD-PARTY OBLIGATION ENFORCEMENT

By his second issue, Lynn contends that the trial court's enforcement award of $12,986.61 for third-party debts Cassandra paid on behalf of Lynn constitutes an abuse of discretion because it is duplicative of other amounts paid to Cassandra and these debts were paid from a joint checking account into which Lynn deposited funds.

Lynn argues that the third-party debt enforcement award constitutes a double recovery for Cassandra because the payments she made to third parties were paid from a joint bank account into which Lynn contributed funds. We construe this argument to be a challenge to the sufficiency of the evidence to support the enforcement award. The record reflects that Cassandra testified to having paid substantial amounts of Lynn's obligations under the temporary orders out of her personal accounts. This testimony was supported by bank statements reflecting amounts Cassandra paid on debts owed by Lynn under the temporary orders. However, it is also true that Cassandra testified that she made these payments out of a joint account.[5] Further, Lynn testified that he made deposits into a joint bank account for the purpose of allowing Cassandra to make payments on obligations required under the temporary orders. However, the records for the account into which Lynn deposited money cover up to March of 2019, while the temporary orders were issued in June of 2019. As the factfinder, the trial court had the exclusive right to exercise its discretion by believing that Cassandra made these

---

[5] It appears that this testimony may have been the result of a misstatement by Cassandra's trial counsel by which he asked her if she made $12,986.61 in payments on Lynn's behalf out of a joint account. Cassandra answered the question in the affirmative.

8

payments out of her personal bank accounts. *Townsend v. Vasquez*, 569 S.W.3d 796, 808 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) (op. on reh'g) ("In a bench trial, the trial court, as the trier of fact, is the sole judge of the witnesses' credibility and the weight to be given their testimony.").

Lynn further contends that the evidence does not support the $12,986.61 amount awarded for Cassandra's payment of Lynn's obligations under the temporary orders. However, Lynn's entire argument with the amount awarded is that Cassandra failed to establish why she is entitled to amounts paid out of a joint account into which Lynn deposited funds. As addressed above, the trial court resolved this conflict in the evidence by accepting Cassandra's testimony that she paid $12,986.61 of Lynn's third-party obligations out of her personal bank account. Lynn does not otherwise challenge the amount of the trial court's award.

We overrule Lynn's second issue.

## RECONSTITUTED ESTATE AWARD

By his third issue, Lynn contends that the trial court's reconstitution of the estate represents excessive and duplicative amounts that were not supported by evidence and not properly determined, as required by statute.

When a court finds that a party to a marriage has committed fraud on the community estate, the court is permitted to reconstitute the estate and award a disproportionate amount of the community estate to the other spouse. *See Cantu v. Cantu*, 556 S.W.3d 420, 427 (Tex. App.—Houston [14th Dist.] 2018, no pet.). A presumption of fraud arises where one spouse breaches the fiduciary duty owed to the

9

other spouse and disposes of the other spouse's one-half interest in community property without the other's knowledge or consent. *Loaiza v. Loaiza*, 130 S.W.3d 894, 901 (Tex. App.—Fort Worth 2004, no pet.). When this presumption of fraud arises, the burden of proof is on the disposing spouse to show fairness in disposing of the community assets. *Id.* "Courts look with disfavor upon gifts by the husband to 'strangers' of the marriage, particularly of the female variety." *Id.*

After making a finding of fraud, the court must perform two calculations: (1) the value by which the community estate was depleted as a result of the fraud on the community, and (2) the amount of the reconstituted estate, which is the value of the community estate that would have existed if the fraud on the community had not occurred. *Cantu*, 556 S.W.3d at 427 (citing section 7.009(b)(1)). After making these calculations, the trial court must divide the value of the reconstituted estate between the parties in a manner that is just and right. *Id.* When the trial court fails to make the required calculations, a party should object and request that the court make the requisite findings relating to the value of the reconstituted estate. *Villalpando v. Villalpando*, 480 S.W.3d 801, 809–10 (Tex. App.—Houston [14th Dist.] 2015, no pet.). However, each party in a divorce proceeding has a responsibility to produce evidence of the value of various properties to provide the trial court a basis upon which to make its just and right division. *Howe v. Howe*, 551 S.W.3d 236, 254 (Tex. App.—El Paso 2018, no pet.). "Generally, a party who does not provide to the trial court any value for the property cannot, on appeal, complain of the trial court's lack of information in dividing the community estate." *Slicker v. Slicker*, 464 S.W.3d 850, 858 (Tex. App.—Dallas 2015, no pet.).

Here, the evidence established that Lynn used community funds to provide an apartment, utilities, and entertainment to a paramour during the pendency of the divorce without Cassandra's knowledge or consent. This evidence gave rise to the presumption of fraud on the community. *Loaiza*, 130 S.W.3d at 901. As such, the burden to show the fairness in his disposal of community funds was borne by Lynn. *Id.* Lynn did not meet this burden. Rather, Lynn challenges the sufficiency of the evidence to support the trial court's award of a reconstituted community estate. The record contains evidence proving that Lynn made payments that did not benefit Cassandra or the community. Further, Lynn testified that he incurred expenses that inured to the benefit of his paramour. Lynn did not provide evidence showing which of these expenses were reasonable expenses necessary to support himself rather than used to support his paramour. *See Slicker*, 464 S.W.3d at 858. Lynn takes issue with the trial court's finding of fact that Lynn wasted $28,569.58 supporting his paramour, but the divorce decree's reconstitution award is for only $3,350. Considering the entire record, we conclude that there is sufficient evidence that Lynn committed constructive fraud on the estate and to support a $3,350 reconstitution award.

Lynn also contends that the trial court failed to make the requisite calculations under section 7.009(b)(1). However, the trial court made findings of what assets were in the community estate as well as their values.[6] Further, the trial court made specific findings that Lynn wasted $28,569.58 by supporting his paramour during the pendency

---

[6] We acknowledge that the trial court did not ascribe a specific valuation for the lease of a 2017 Chevrolet Suburban or for cell phones and cellular/data plans. However, the record does not reflect that Lynn provided evidence of the value of these assets. *See Slicker*, 464 S.W.3d at 858. Further, it would appear that the value of these items are de minimis in relation to the value of the community estate as a whole.

11

of the divorce. We believe these calculations to be sufficient to comply with the requirements of section 7.009(b)(1).

Further, Lynn contends that the trial court's failure to make the calculations identified by section 7.009(b)(1) is reversible error. However, the case he cites in support of this proposition does not support that such an omission is reversible. In fact, the cited case does not address the requisites of reconstitution of the community estate.[7] Because we have previously determined that the trial court did render the calculations in compliance with section 7.009(b)(1), we need not determine whether the failure to make these calculations constitutes reversible error. TEX. R. APP. P. 47.1.

We overrule Lynn's third issue.

## ATTORNEY'S FEES FOR ENFORCEMENT

By his fourth issue, Lynn contends that the trial court's awards of attorney's fees to Cassandra in the divorce decree and judgment of enforcement are duplicative of other awards. Specifically, Lynn contends that the trial court made him responsible for half of the debt owed on a credit card that Cassandra used to pay a portion of her attorney's fees, so requiring him to pay those attorney's fees while also paying half of the balance on that credit card constitutes a double recovery for Cassandra. Lynn also contends that

---

[7] Lynn cites *Jacobs v. Jacobs*, 687 S.W.2d 731 (Tex. 1985), for the proposition that, "[w]hen the court fails to make such findings after objection and request, the court commits reversible error by failing to define what property is properly a part of the community estate or the reconstituted estate and therefore, subject to division." However, *Jacobs* makes no such point. Rather, *Jacobs* addressed the issue of if "reversible error affecting the 'just and right' division of the community estate is found, the court of appeals must remand the entire community estate for a new division." *Id.* at 733.

12

the trial court's award of $15,000 in attorney's fees in both the enforcement and a contempt judgment is not supported by the evidence.

We will first address Lynn's contention that the attorney's fees awarded by the enforcement and contempt judgments constitute a duplicative award. By separate opinion, we conditionally granted Lynn's mandamus petition and ordered the trial court to vacate its contempt judgment as void. *In re Johnston*, 2022 Tex. App. LEXIS 9269, at *9. Because the contempt judgment has been vacated, Lynn's contention that the enforcement and contempt judgments awarded duplicative attorney's fee awards has been rendered moot. Further, we note that Cassandra's counsel testified that attorney's fees of $23,274 were incurred in obtaining the enforcement judgment. Consequently, the evidence supports the trial court's award of $15,000 in attorney's fees related to the enforcement action.

Lynn also contends that the trial court gave Cassandra a double recovery by awarding her $25,000 in attorney's fees for the divorce and ordering Lynn to pay half of the balance of a credit card that was used to pay a portion of Cassandra's attorney's fees. Initially, we note that the balance of the credit card at the time the divorce decree was entered was $30,335.19, and that the record reflects that Cassandra paid her attorneys $6,000 through this credit card. Consequently, the trial court's division of the debt on this credit card does not necessarily reflect any portion of the $6,000 payment of attorney's fees.

We overrule Lynn's fourth issue.

By his fifth issue, Lynn contends that the trial court abused its discretion by failing to account for Lynn's other child and ordering indefinite child support into adulthood.

We review a trial court's order setting the amount of an obligor's child support for an abuse of discretion. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam). A trial court abuses its discretion if it acts without reference to any guiding rules or principles; in other words, if it acts in an arbitrary or unreasonable manner. *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004).

Lynn contends that the trial court abused its discretion in failing to consider his other child in setting child support. In support of his argument, Lynn cites Texas Family Code section 154.128, which identifies how child support is to be calculated when the obligor has children in more than one household, and *Tucker v. Tucker*, 908 S.W.2d 530 (Tex. App.—San Antonio 1995, writ denied). *Tucker* provides that the amount of child support depends, in part, on the financial ability of the parent to pay, giving due consideration to any obligation the parent owes to another child. *Id.* at 533.

However, Lynn did not prove that he owed any obligation to this other child during the divorce proceeding. The Texas Family Code provides multiple ways to establish that a man is the father of a child. A father-child relationship can be established by the voluntary acknowledgement of paternity under section 160.302, an adjudication of parentage, or an unrebutted presumption of parentage. § 160.201(b)(1)–(3). Lynn presented no evidence that he had executed an acknowledgement of paternity or been adjudicated to be the parent of the other child. Section 160.204 identifies five methods

14

by which a man will be presumed to be the father of a child. *See* § 160.204(a). Four of these methods require the man to be married to the mother of the child. § 160.204(a)(1)–(4). The fifth of these methods requires that the man have resided with the child for the first two years of the child's life and represented to others that the child is his own. § 160.204(a)(5). At the time of trial, the child was only six months old. Consequently, Lynn failed to prove that he owed any obligation to this other child and we will not conclude that the trial court abused its discretion by failing to consider any such obligation in setting child support for the child of the marriage.

Lynn also argues that the trial court abused its discretion by ordering him to provide child support for B.J., the minor child of the marriage, for an indefinite term. The Texas Family Code provides that a court may order either or both parents to provide for the support of a child for an indefinite period if the court finds that the child requires substantial care and personal supervision because of mental or physical disability and will not be capable of self-support, and the disability exists before the child's eighteenth birthday. § 154.302(a). The trial court made a specific finding that B.J. suffers "from an extremely rare disease known as 'Alström Syndrome[,]' which requires substantial care and personal supervision and will not be capable of self-support." Thus, the trial court complied with the statutory requisites for ordering indefinite support. Notably, Lynn does not challenge the sufficiency of the evidence supporting the trial court's finding.

Rather, Lynn cites *In re D.C.*, 549 S.W.3d 136 (Tex. 2018) (Guzman, J., concurring in denial of petition for review), as identifying a number of issues that arise when indefinite child support is ordered under section 154.302. Initially, we note that Lynn cites this opinion as an opinion of the Texas Supreme Court, but it is rather Justice Guzman's

concurrence to the court's denial of petition for review. We agree with Justice Guzman's concerns in this area and echo her call that, "pending a legislative response, this Court should, in an appropriate case, give the lower courts guidance regarding how 'detailed and specific' the evidence must be to meet section 154.302's standards." *Id.* at 138. However, such guidance has not been given by the Texas Supreme Court and the legislature has not altered the statutory requirements under which such an indefinite order is authorized. As such, we must conclude that the trial court did not abuse its discretion in ordering Lynn to pay child support for an indefinite period.

We overrule Lynn's fifth issue.

## CONCLUSION

For the foregoing reasons, we modify the enforcement judgment to decrease the $37,187.08 cash judgment to $26,411.85. As modified, we affirm the judgment of enforcement. We affirm the divorce decree.

Judy C. Parker
Justice

16